MARY H. ARCHIBALD, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

1. APPEAL — ACTION TO RECOVER POSSESSION OF REAL PROPERTY UNDER FORM OF ACTION IN EQUITY. When an action which has assumed the form of an action in equity to abate a nuisance is in every substantial respect an action at law to recover the possession of real property, and no question is raised as to the form of the action, it must be reviewed on appeal as an action to recover the possession of real property.

2. ANSWER ALLEGING THAT DEFENDANT WAS NOT IN POSSESSION. Where the answer as to a parcel of land, the possession of which is sought to be recovered, does not dispute the plaintiff's title nor claim any title in the defendant, but simply alleges that the defendant was never in possession, and the trial court finds, upon sufficient evidence, that the defendant was in possession of the parcel and exercising such acts of ownership over it as justified including it in the action, a judgment for the plaintiff as to such parcel, affirmed by the Appellate Division, cannot be disturbed in the Court of Appeals.

3. LAND UNDER WATER — EFFECT OF CONVEYANCE BY STATE TO OWNER OF UPLAND. When land under water has been conveyed by the state to the owner of the adjacent upland, it becomes appurtenant to the upland and will pass by a conveyance of the latter without specific description.

4. RIPARIAN LAND IN HUDSON RIVER — TITLE NOT ACQUIRED BY RAILROAD COMPANY. The predecessor of the N. Y. C. & H. R. Railroad Company could not acquire title to land under water on the shore of the Hudson river by indicating the land on a map filed by it under the statute (L. 1848, ch. 30, § 5), and by taking possession of the land and filling it up; and after such acts, a grant from the state to the owner of the adjoining upland would carry the title to him.

5. STATE GRANTS TO UPLAND OWNER AND TO RAILROAD COMPANY. When the state has granted its title to land under water on the shore of the Hudson river to the owner of the upland, a subsequent grant to the railroad company, possibly including the same land within a general description, does not avail to convey title thereto to the company.

6. Grant from State on Condition Subsequent — Non performance. The fact that an upland grantee from the state, of a grant of land under water on the shore of the river, conditioned upon the construction of docks within a specified time, has not performed the condition, does not entitle the railroad company, claiming under a subsequent grant, to treat the prior grant as void or to attack it, when it has not been avoided by the state.

7. Adverse Possession — Champerty. The fact that a railroad company had filed a map and made a survey is not a sufficient basis for an adverse possession within the statute (1 R. S. 739, § 147) avoiding grants of land for champerty.

8. Grant to Railroad Company after Grant to Owner of Upland. A grant by the state to a railroad company, of land under water, by a general description, should not be construed as a grant of land not necessarily included within the description, previously conveyed by the state to the owner of the adjoining upland, and does not of itself furnish a basis for an adverse possession claimed to avoid subsequent conveyances on the ground of champerty.

9. Findings as to Adverse Possession—Attack upon Deeds for Champerty. When the trial court, in an action for the possession of real property, has found, upon sufficient evidence, all the facts with respect to adverse possession in the plaintiff's favor, it is not open to the defendant to attack any of the deeds in the plaintiff's chain of title for champerty.

10. Failure of Proof of Adverse Possession of Riparian Land by Railroad Company. Where, in an action for the possession of a parcel of riparian land, the evidence shows that the land was scarcely susceptible of actual occupation and cultivation; that it was, in a sense, connected with the grounds surrounding the station of the defendant railroad company, and that passengers to and from the station passed over it, but that it was not until the defendant extended its track over the land and set up a derrick upon it about five years before the commencement of the action that there was any actual occupation or possession by any one, it is competent for the trial court to find that there was no adverse possession by the defendant sufficient to bar the plaintiff's right of recovery under the presumption arising from possession of the legal title.

11. Evidence — Payment of Taxes. Payment of taxes is no evidence of possession, either actual or constructive, and does not show a claim of possession.

*Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 1 App. Div. 251, affirmed.

(Argued November 23, 1898 ; decided January 10, 1899.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered

February 28, 1896, modifying and, as modified, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ira A. Place* and *Frank Loomis* for appellant.   As to the parcel firstly described in the amended complaint, neither the plaintiff, her ancestors, predecessors or grantors, nor any of them, have been seized or possessed of the said parcel, or of the undivided one-half part thereof, within twenty years next preceding the commencement of this action.   This action is barred by the Statute of Limitations.   (Pingrey on Real Prop. § 1164; *Greenleaf* v. *B., F. & C. I. R. R. Co.*, 132 N. Y. 408; *N. Y. C. & H. R. R. R. Co.* v. *Brennan*, 12 App. Div. 103; *Dominy* v. *Miller*, 33 Barb. 386.)   The defendant's title by adverse possession was made out.   (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83; Code Civ. Pro. § 370; *Munro* v. *Merchant*, 28 N. Y. 9; *Thompson* v. *Burhans*, 61 N. Y. 52; *Robie* v. *Sedgwick*, 35 Barb. 319; *Sherman* v. *Kane*, 86 N. Y. 57; *Bond* v. *Fay*, 8 Allen, 212; *Trustees, etc.*, v. *Kirk*, 84 N. Y. 215; Pingrey on Real Prop. §§ 1158, 1174.)   The defendant having been so in possession of the parcel, claiming under a title adverse to that of plaintiff's grantors, the deeds under which plaintiff claims are absolutely void.   (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; 1 R. S. § 147; *Crary* v. *Goodman*, 22 N. Y. 170.)   It was error to exclude evidence of the payment of taxes by the defendant.   (Buswell on Lim. & Ad. Pos. § 248; *Wren* v. *Parker*, 57 Conn. 579; *Ewing* v. *Burnett*, 11 Pet. 41; Pingrey on Real Prop. § 1170; *Little* v. *Downing*, 37 N. H. 355; *Farrar* v. *Fessenden*, 39 N. H. 268; *Thompson* v. *Burhans*, 79 N. Y. 96.)

*Ralph E. Prime* for respondent.   The plaintiff was shown to be owner in fee of the legal title to the whole of the parcel No. 2, westerly of the railroad, and also to be the owner in

fee of the legal title to the equal undivided one-half of parcel
No. 1, easterly of the railroad, and hence was entitled to have
the nuisance removed from the parcel No. 2, and to recover
possession of her undivided half share in parcel No. 1.
(Code Civ. Pro. § 369.)    The defendant proved no title to
either parcel.    (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*,
135 N. Y. 83 ; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*,
135 N. Y. 613.)    The defense of adverse possession cannot be
considered in this court.    It was an affirmative defense.    It
depended upon facts to be proved and disproved, and to be
found, one way or the other, by the trial court.    The trial
court found on the facts against the defendant, and that find-
ing was unanimously affirmed by the Appellate Division of
the Supreme Court.    (Const. N. Y. art. 6, § 9 ; *People ex rel.*
v. *Barker*, 152 N. Y. 417.)    The defendant had not nor had
its predecessor any rights or privileges in parcel No. 1 prior to
the patent to Blackwell and Burr to be preserved.    (*N. Y.
C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 93.)    Plain-
tiff's remedy is not barred by the Statute of Limitations.
(Code Civ. Pro. § 368; *Bliss* v. *Johnson*, 94 N. Y. 242.)
Testimony of payment of taxes was properly excluded.
(*Thompson* v. *Burhans*, 61 N. Y. 52 ; *Greenleaf* v. *B., F.
& C. I. R. Co.*, 141 N. Y. 395.)

O'BRIEN, J.  This action has assumed the form of one in
equity to abate a nuisance which it is alleged the defendant
maintains upon the plaintiff's land, but in every substantial
respect it is really an action at law to recover the possession
of real property.    There was no question made, however, in
the courts below with respect to the form of the action, and
no question of that kind is raised here.    The case must, there-
fore, be reviewed in this court in the same way as if it had
been in form what it is in fact, an action at law to recover the
possession of real property.    The principles of law that apply
in such cases must control the disposition of this appeal.

The controversy is concerning the title and possession of
two small parcels of land which originally were under the

waters of the Hudson river. Each parcel is described in the complaint in a separate cause of action. The second parcel thus described, and which is known in the case as parcel number two, is not really a subject of controversy between the parties. The defendant does not dispute the plaintiff's title to that parcel, nor does it claim any title in itself. It simply alleges by way of defense as to that cause of action that the defendant was never in possession of the land, and was not in possession at the time of the commencement of the action. This is simply an averment which concedes the plaintiff's title, denies any interference either with her title or possession, and asserts that there never was any cause for this action in so far as it relates to this particular parcel. The trial court, however, has found that at the time of the commencement of this action the defendant was in possession of the parcel, and exercising certain acts of ownership over it which justified the plaintiff in including it in the controversy. It is admitted that the defendant at least occupied some small part of it for a switch-man's shanty, and while there is some dispute in regard to its responsibility for the maintenance of the telegraph poles and wires, yet the case is in such condition that we have no right to say that the findings of the trial court are against evidence. They are supported by sufficient evidence, and, having been affirmed on review by the Appellate Division, they are not open to review here. The question, therefore, in regard to this parcel may be eliminated from the discussion, and the judgment below, in so far as it relates to that, cannot be disturbed.

The real controversy between the parties was with respect to the title to the first parcel described in the complaint, and which is known in the case as parcel number one This, like the other parcel, was originally under the waters of the river, and the judgment below is to the effect that the plaintiff was entitled to recover an undivided half of it, the other half having been found to belong to the defendant. The plaintiff's title to this parcel is founded upon the patent from the commissioners of the land office to her remote grantors, bearing date the 18th of July, 1870. These grantors were then the

owners of the adjoining upland, and apparently were entitled, for that reason, to a grant from the state. One or more of the mesne conveyances under which the plaintiff claims title does not specifically describe this parcel. It is, however, I think, included within general words of description sufficient to identify it so as to pass by a conveyance. Moreover, when land under water has been conveyed by the state to the owner of the adjacent uplands, the lands under water so conveyed become appurtenant to the uplands, and will pass by a conveyance of the latter without specific description. The grant from the state must, under the statute, be made to the upland owner who, as such, has the prior right, and, hence, it would seem to be unnecessary, when the latter conveys his lot or farm to which the land under water is appurtenant, to describe the land under water separately. So we think that the various grants to the plaintiff from the parties to whom the state conveyed the parcel in question sufficiently described it to vest title in the plaintiff, in the absence of some prior grant or superior title in the defendant.

It is contended that the plaintiff failed to prove possession of the parcel in question in herself or predecessors in title within twenty years prior to the commencement of the action. But having proved *prima facie* that she was vested with the legal title, then, under section 368 of the Code, her possession is to be presumed, and the possession of any one else is presumed to be under or in subordination to this title. It becomes necessary, therefore, to examine the defendant's claim of title in order to determine whether it has a better one than the plaintiff. The defendant is the successor in interest of a railroad corporation created by chapter 216 of the Laws of 1846. The two corporations were merged and consolidated in the defendant under an agreement made in 1869, authorized and confirmed by chapter 917 of the laws of that year. The defendant's claim of title originated in the filing of a map in 1868, which it is assumed covered the parcel in question. This map was made and filed under the fourth section of the act incorporating the defendant's prede-

cessor in interest, and under the fifth section of chapter 30 of the Laws of 1848, which provides that if at any time after the location by the railroad company of its track, and the filing of the map, it should appear to the directors that the line or some part thereof might be improved, it should be lawful to alter the line and cause a new map to be filed. It appears that, shortly before the consolidation of the original railroad with the defendant in 1869, it proceeded to fill in the parcel of land under water which is now in controversy, and to prepare it for the uses of the corporation. There seems to be no dispute concerning the fact that the defendant or its predecessor did fill up that part of the river, and thus reclaimed the land in controvery. In other words, this parcel of land in its present condition was created by the defendant or its predecessor by filling in the shores of the river with earth. But no title has been acquired by the defendant in that way, or by indicating the parcel upon the map. The railroad company could not acquire title to land under water by taking possession of it and filling it up. The title still remained in the state, and the grant from the sovereign to the owner of the adjoining upland would carry the title to him. (*Blakslee Mfg. Co.* v. *Blakslee's Sons Iron Works,* 129 N. Y. 155; *People ex rel. Blakslee* v. *Commrs. of the Land Office,* 135 N. Y. 447; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge,* 135 N. Y. 83; *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 135 N. Y. 613; *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75.) But the defendant, on the 26th of December, 1873, procured from the commissioners of the land office a grant of certain lands under water on the shores of the river for its corporate purposes, and which grant it is claimed included the parcel in question. But since the grant to the plaintiff's remote grantors antedated that to the defendant by three years, it follows that the state had no title at the time to the parcel in question that it could convey to the defendant. There is nothing in the language of the patent indicating that the commissioners of the land office supposed that they had any title to this parcel which they could convey, although the general language of the description may have covered it. The

prior patent to the plaintiff's predecessors was a grant for com-
mercial purposes, and upon condition that within a specified time
the subject-matter of the grant should be applied to commercial
uses by the construction of docks and other conveniences for the
promotion of commerce.   It is said that the grantees did not
apply the property to any such uses within the time specified,
and we will assume that that is so.   But this does not enable
the defendant to treat the prior patent as invalid or void, or
permit an attack upon it in a collateral way.   If there had
been a breach of the conditions subsequent in the grant, the
defendant is not at liberty to take advantage of that omission.
The state only can claim the right to vacate the patent for
breach of conditions subsequent, and then only in a direct
action or proceeding for that purpose.   The defendant can
raise no such question in this court.

The learned counsel for the defendant contends that the
prior patent from the state to the plaintiff's remote prede-
cessors was void for champerty.   This point assumes that
when that grant was executed and delivered the defendant
held the land adversely under a specific claim of title, but it
had no record or paper title whatever at that time.   The rail-
road had then filed a map and made a survey.   But that clearly
was not a sufficient basis for an adverse possession within the
statute avoiding grants of land for champerty.   The con-
veyances in the chain of plaintiff's title made in 1887, and
subsequently, are attacked on the same ground.   The only
specific title that the defendant then had was the patent of
1873, in which various parcels of land under water situate in
different counties of the state are described in general
language.   But since the state had already conveyed the land
in question to the parties under whom the plaintiff claims,
the general description of lands in the grant to the defendant
does not necessarily include the parcel in question.   The
patent to the defendant should not be construed as a grant of
any lands which the state had conveyed by prior deed, and
which it did not own when the conveyance to the defendant
was given.   Moreover, the trial court found all the facts with

respect to adverse possession in the plaintiff's favor, and hence it is not open to the defendant to attack any of the deeds in the plaintiff's chain of title for champerty. (*Crary* v. *Good-man*, 22 N. Y. 170 ; *Saunders Case*, 135 N. Y. 613.)

The principal question litigated upon the trial was under the defense of adverse possession, and that is the most prominent question presented by the argument in behalf of the defendant in this court. It is quite likely that upon the proofs in the case, it could be held, as matter of law, that the defendant had been in the actual possession and occupation of the parcel since about the year 1887. But it was necessary in order to sustain this defense for the defendant to show that such adverse possession existed for at least twenty years prior to the commencement of the action, or from about the year 1873, and the trial court has found that it has not been in the actual, exclusive or continuous possession, occupation or use of the parcel for that period. Whether the defendant had held the premises adversely for a sufficient period of time to bar this action was, in its nature, a question of fact ; though if the facts and all inferences to be drawn from them were undisputed, it might be a question of law. The burden of proving adverse possession was upon the defendant, and it had to encounter, in the first place, the presumption of law that the plaintiff was in possession under her title derived through the patent of 1870 from the state. The defendant's possession was, at best, upon the evidence somewhat equivocal. It cannot be said, as matter of law, upon the evidence in the record, that any one was in the actual possession and occupation of the parcel during the period of twenty years prior to the commencement of the action. The land was not' inclosed or cultivated, or put to the exclusive use of any one. When the defendant's right rests entirely upon a claim of adverse possession, it must be shown that there has been a real substantial inclosure and actual occupancy, a *possessio pedis*, which is definite, positive and notorious. (*Jackson* v. *Schoonmaker*, 2 Johns. 230, 235.) The rule applicable to the defense of adverse possession was stated by this court in the case of

*Bliss* v. *Johnson* (94 N. Y. 242) in the following language :
"The settled principles of law require courts to consider the
true owner as constructively in possession of the land to which
he holds the title, unless they are in the actual hostile occupa-
tion of another under a claim of title ; and this rule is still
more imperative in the case of wild and uncultivated tracts or
lands which are not legally susceptible of actual occupation
and cultivation. (*Doe* v. *Thompson*, 5 Cow. 371 ; *Thompson*
v. *Burhans*, 79 N. Y. 99.) This possession is deemed to con-
tinue until there is an actual disseizin and expulsion of the
true owner from the land, and when such dispossession termi-
nates, if it does terminate within twenty years, the possession
is, by construction of law, considered as having again returned
to him who holds the legal title." The parcel of land in con-
troversy was of such character and so situated that it was
scarcely susceptible of actual occupation and cultivation.
Passengers to and from the railroad station passed over it.
It was, in a certain sense, connected with the grounds sur-
rounding the station, and not until the defendant extended its
railroad track over it, and set up a derrick upon it about the
year 1887, can it be said that there was any actual occupation
or possession by any one. It was, therefore, competent for
the trial court to find, upon all the evidence, that there was
no adverse possession by the defendant within twenty years
sufficient to bar the plaintiff's right of recovery.

There is one other question in the case, and that arises upon
an exception to the exclusion of proof offered by the defend-
ant, that it had paid the taxes on the parcel in question since
the year 1880 and down to the year 1894. It was stated that
this evidence was offered for the purpose of supporting and
showing the defendant's claim of possession. Payment of taxes
is no evidence of possession, either actual or constructive.
(*Greenleaf* v. *B., F. & C. I. R. Co.*, 141 N. Y. 395, 399.) It has
sometimes been regarded as an act which shows a claim of title,
but not a claim of possession, and if there had been any con-
troversy in the case with respect to the nature of the defend-
ant's claim of title, it would possibly have been competent

for the defendant to show that it had paid the taxes on the land. But there was not, and could not have been, any question with respect to the nature of the title which the defendant claimed. It claimed under the patent of 1873, preceded, as it was, by the filing of a map including the parcel in question, and by the act of filling up the space and thus creating dry land as it exists. The payment of taxes by the defendant could have added nothing to its possession or its claim of title, and since that fact could have had no influence on the issue of actual possession, the ruling of the court excluding the proof, whether right or wrong, was immaterial, and, therefore, the exception is not available to the defendant for the purpose of reversing the judgment.

For these reasons we think the judgment below should be affirmed, with costs.

All concur, except GRAY, J., absent.

Judgment affirmed.