# THE

# NEW YORK SUPPLEMENT

## VOLUME 134

(76 Misc. Rep. 62.)

### BROOKLYN, Q. C. & S. R. CO. v. BIRD et al.

(Supreme Court, Trial Term, Kings County.  March 19, 1912.)

1. EMINENT DOMAIN (§§ 8, 317*)—RIGHTS ACQUIRED—STATUTES—CONSTRUC-
   TION.
   A statute authorizing the taking of property for a public use must be
   strictly construed, and no implication will be indulged that a greater in-
   terest is taken than is absolutely necessary to satisfy the language and
   object of the statute.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 25, 30,
   34, 43, 44, 834–840; Dec. Dig. §§ 8, 317.*]

2. HIGHWAYS (§ 80*)—RIGHTS ACQUIRED—EASEMENTS.
   Generally an easement only is taken for highway purposes, and a pro-
   vision directing the ascertainment of the damage or value of the land
   taken does not alone authorize the taking of a fee.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 288, 290;
   Dec. Dig. § 80.*]

3. HIGHWAYS (§ 81*)—ACQUISITION OF LAND FOR HIGHWAY—ABANDONMENT—
   RIGHTS OF OWNER OF FEE.
   Where a highway is abandoned and the purpose for which the land
   was taken has ceased, it reverts to the owner of the fee.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. § 289; Dec. Dig.
   § 81.*]

4. TURNPIKES AND TOLL ROADS (§ 15*)—ACQUISITION OF LAND BY TURNPIKE
   COMPANY—TITLE ACQUIRED.
   A turnpike company authorized by Laws 1809, c. 74, to purchase real
   estate for the purposes of its incorporation, subject to Laws 1807, c. 38,
   authorizing the officers of such companies to contract with the owners of
   land for the purchase of so much thereof as shall be necessary for the
   making of its roads, etc., takes merely an easement for highway purposes
   in the absence of any deed of the fee.
   [Ed. Note.—For other cases, see Turnpikes and Toll Roads, Cent. Dig.
   §§ 47–51; Dec. Dig. § 15.*]

5. TURNPIKES AND TOLL ROADS (§ 23*)—ACQUISITION OF EASEMENTS—CONVEY-
   ANCE OF FEE—VALIDITY.
   Where a turnpike company acquired only an easement for highway
   purposes, a statute authorizing it to convey a fee for other than highway
   purposes without compensating the owner is illegal, and conveyances un-

der statutes authorizing conveyances must be construed to pass merely the easement.

[Ed. Note.—For other cases, see Turnpikes and Toll Roads, Cent. Dig. §§ 67–70; Dec. Dig. § 23.*]

**6. DEEDS (§ 114*)—HIGHWAYS.**

A conveyance of land described as "beginning at a point on * * * turnpike road * * * running thence," etc., gives to the grantee title to the middle of the highway, subject to the easement of the road.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*]

**7. HIGHWAYS (§ 81*)—ACQUISITION OF EASEMENT FOR HIGHWAY PURPOSES—ABANDONMENT OF HIGHWAYS—RIGHTS OF OWNERS.**

An owner of the fee to the center of a highway is, on the abandonment of the highway, constituting only an easement, entitled to a surplus arising out of the sale of the land for taxes.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 289; Dec. Dig. § 81.*]

**8. ADVERSE POSSESSION (§ 60*)—ACTS CONSTITUTING.**

The possession of a turnpike company of the land constituting its highway after its abandonment of the highway is presumptively under its original right constituting only an easement until it does something to evidence a hostile holding to the owner of the fee and a claim on its part to be a holder in fee.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–314; Dec. Dig. § 60.*]

**9. ADVERSE POSSESSION (§ 13*)—ACTS CONSTITUTING.**

Where property used as a road by a turnpike company, which had only an easement for a highway, was used, after the abandonment of the road by the company, for over 20 years by the public as a roadway still retaining its appearance as a roadway, there was no user by the company under claim of title in fee in hostility to the owner of the record title essential to ripen into title by adverse possession, which must be actual, visible, exclusive, and hostile.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65–76; Dec. Dig. § 13.*]

**10. ADVERSE POSSESSION (§ 114*)—ACTS CONSTITUTING.**

The failure of a turnpike company to pay taxes on land, over which it had merely an easement for its road, after the abandonment of the road, is not evidence of title in fee, as against the owner of the record title, though it unsuccessfully prosecuted an action to avoid taxation.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682–690; Dec. Dig. § 114.*]

**11. JUDGMENT (§ 707*)—CONCLUSIVENESS—PARTIES CONCLUDED.**

A judgment rendered in a suit by a turnpike company against a city, which restrains the city from removing poles and wires of the company from the roadway, is not binding on the owner of the record title, not being a party to the suit, so as to preclude his claim to the title in fee because of the abandonment by the company of its road.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. § 707.*]

**12. ADVERSE POSSESSION (§ 114*)—ACTS CONSTITUTING.**

A conveyance by a turnpike company, having only an easement in its road, of a part of its roadway, is not evidence of its title by adverse possession of another part of the roadway.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682–690; Dec. Dig. § 114.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Brooklyn, Queens County & Suburban Railroad Company against Maria A. Bird and another. Judgment for defendants.

M. E. Finnegan, for plaintiff.

Watson & Kristeller, for defendant Bird.

CRANE, J. This action, brought to recover the balance remaining upon the sale of land for unpaid taxes, involves the title to that portion of Jamaica Plank Road now included in the block bounded by Marion and Sumpter streets, Rockaway and Hopkinson avenues in the borough of Brooklyn.

The plaintiff claims the lands as the successor to the Brooklyn, Jamaica & Flatbush Turnpike Company, alleging that the latter company took a fee in the highway. The defendant Maria A. Bird has already received the money from the city of New York under the claim that the plaintiff only had an easement in the road, which had been abandoned; the fee remaining in or reverting to her as the last grantee in the chain of title from the original owners.

The first question to be decided is whether the Brooklyn, Jamaica & Flatbush Turnpike Company took a fee or an easement for highway purposes in the Brooklyn & Jamaica Turnpike Road.

This case has been submitted upon an agreed statement of facts supplemented by oral testimony, and from these it appears that there is no deed of record from the original owners of the fee to the railroad company, nor any record of condemnation proceedings touching that part of the road in question. As the highway, however, was opened and used as such by the Brooklyn, Jamaica & Flatbush Turnpike Company and its successors for many years after 1809, it is to be presumed that the possession by the latter company was under and by virtue of the statutes relating thereto. The plaintiff insists that these statutes and the acts thereunder show the taking of a fee, while the defendant maintains that an easement only could have been taken. The Brooklyn, Jamaica & Flatbush Turnpike Company was incorporated by chapter 74 of the Laws of 1809 and made capable of purchasing, holding, and conveying real estate for *the purposes only of its incorporation.* Certain commissioners therein named were appointed to lay out the roads directed by the act subject to the regulations and restrictions of the General Turnpike Act.

The act relating to turnpike companies, to which the Brooklyn, Jamaica & Flatbush Turnpike Company was made subject by the above act of its incorporation, was the Law of 1807 (Laws 1807, c. 38), which, among other things, provided:

"The president and directors of the company so to be incorporated may contract and agree with the owners of said lands for the purchase of so much thereof as shall be necessary for the making of said road * * * and in case of disagreement between the said parties with respect to the value of the land so as aforesaid to be laid out and the damages, if any, to be done to the said land, it shall and may be lawful * * * to apply to one of the judges of the Court of Common Pleas * * * to appoint three appraisers * * * and the said appraisers shall proceed to view the premises, and having ascertained and determined the damages, shall make an inquisition * * * stating the amount of the damages which the owners of the land used for such road have sustained, * * * and the said president and directors, upon paying the said several owners of the said lands the sev-

eral sums so assessed and awarded, * * * shall and may have and hold to them and their successors and assigns forever the lands and tenements in said inquisition described."

It being conceded that there was no deed of conveyance transferring the fee to the turnpike company, did that company by proceedings in invitum take a fee under the above provisions of the Turnpike Law?

[1] The Legislature could have authorized the turnpike company to take a fee; but, unless this has been clearly expressed, it will be presumed that an easement only was taken.

"The state, when taking private property for public use, has a right to prescribe the extent of its interference with private property and acts independently and without consent of the owner, and no implication ought to be indulged that a greater interest or estate is taken than is absolutely necessary to satisfy the language and object of the statute making the appropriation.

"It is a cardinal rule that every statute in derogation of the right of property, or that takes away the estate of a citizen, is to be construed strictly.

"It is not necessary that exact or technical language should be used in a statute for taking private property for public use in order to vest the fee in the public, but it must clearly appear, before this effect can be given to a statute, that it was the intention of the Legislature, disclosed by the act itself, to take a fee.

"The general rule is that the public acquire an easement only in highways.

"It is claimed that compensation for the fee is given under the provision directing the commissioners to award 'the value of the lands' taken and the damage sustained by owners by reason of such taking. * * * This * * * would not justify the conclusion that the fee was taken. The value of the land where an easement only is taken might well be regarded as only just compensation in a case where the use will probably be perpetual.

"'Where an easement is taken for a highway, the compensation is generally estimated in practice at the value of the land itself.'" Washington Cemetery v. Prospect Park & Coney Island Railroad Company, 68 N. Y. 591.

[2] The general rule being that an easement only is taken for highway purposes, the above case shows us that a provision in the statute directing the commissioners to ascertain the damage or value of the land taken does not authorize the taking of a fee.

[3] That part of the Act of 1807 stating that the president and directors, upon paying the owners the sums assessed, shall and may have and hold the land forever, does not direct that a fee be taken, but authorizes the holding of said lands forever for a highway purpose, and not for any other purpose. When the highway is abandoned and the purpose for which they were taken has ceased, the lands will revert to the owner of the fee.

Section 254 of Elliott on Roads and Streets states the law as follows:

"Statutes conferring authority to compel an owner to yield his property to the public demand are to be strictly construed, and this rule governs as to the extent of the estate which may be seized. Thus a statute conferring authority to lay out a street or road imports that an easement only can be appropriated. Where the language of the statute will bear a construction which will leave the fee in the landowner, that construction will be preferred rather than one which will wrest the fee from him."

In Hooker v. Utica & Minden Turnpike Road Company, 12 Wend. 371, it is said:

"Although the act of incorporation vests in the company the title to the lands over which the road passes, on compliance by them with the provisions

of the act, such title must nevertheless, be considered as vested *only for the purpose of a road and when the road is abandoned the land revests to the original owners.*"

In Mahon v. New York Central Railroad Company, 24 N. Y. 658, the above statute is construed as follows:

"The rule that owners of land bounded on public highways prima facie owned the land to the center of the highway is not alone applicable to ordinary highways, but also to turnpikes (Hooker v. Utica & Minden Turnpike Co., 12 Wend. 371); and although the general act relating to turnpike companies passed March 13, 1807, declares, when the president and directors pay the owners of the lands the sums assessed and awarded by the appraisers in their inquisition, they shall have and hold to them, and their successors and assigns forever, the lands and tenements described in their inquisition, yet it has always been held that this and the special act of incorporation vests in the company the title to the lands over which the road passes only for the purposes of the road, and, when the road is abandoned, the land reverts to the original owners. The company only acquired such an estate in the land taken by it as was necessary to fulfill the end and intent of the corporation, and could hold it to no other use, intent, or purpose."

[4] It is quite evident that the Brooklyn, Jamaica & Flatbush Turnpike Company took merely an easement for highway purposes in the property in question, and not a fee.

The cases cited by the plaintiff in opposition to this contention (Heath v. Barmore, 50 N. Y. 302, and People ex rel. Clauson v. Newburgh Plank Road Company, 86 N. Y. 1) applied to land the fee of which had been obtained by purchase.

[5] As the easement in the Jamaica Plank Road was all that the company took under the act of its incorporation and the Turnpike Act of 1807, the Legislature had no power to authorize it to convey a fee or sell and dispose of the property for other than highway purposes. The owner could not be deprived of his reversionary interest by the act of the Legislature without compensation. Heard v. City of Brooklyn, 60 N. Y. 242.

Chapter 377 of the Laws of 1837 and chapter 256 of the Laws of 1839, authorizing the Brooklyn & Jamaica Railroad Company, the successor to the Brooklyn, Jamaica & Flatbush Turnpike Company, to alter its road and to sell the unused portion, gave it no authority to dispose of the fee.

The transfer of the rights of the Brooklyn, Jamaica & Flatbush Turnpike Company to the Brooklyn & Jamaica Railroad Company, to the Jamaica & Brooklyn Plank Road Company, through the East New York & Jamaica Railroad Company to the Jamaica & Brooklyn Plank Road Company, and through foreclosure to the Jamaica, Woodhaven & Brooklyn Railroad Company, consolidated with the Jamaica & Brooklyn Plank Road Company into the Jamaica & Brooklyn Railroad Company; and from the latter to the plaintiff herein, transferred easements only in the property in question which have been lost by abandonment.

[6] In the agreed statement of facts it is stated that some time after the year 1869 this property in question was abandoned as a highway, being mapped out and included in city blocks. At the time that the property was sold for taxes in 1896 by the city of Brooklyn, the

easement had been abandoned, the plank road and highway as such had ceased to exist, and the fee was in the grantees of the original owner, John Ryerson. This property passed from the Ryerson family into Charles Burdette in 1848 by deeds describing the property conveyed as "beginning at a point on the Brooklyn & Jamaica Turnpike Road by woodland of William Furman, running thence," etc. This conveyance gave to Burdette title to the middle of the highway subject to the easement of the road. Van Winckle v. Van Winckle, 184 N. Y. 193, 77 N. E. 33. Burdette's title, at the time of the sale for taxes in May of 1896, was in Lucy E. Stoddard, Philip M. Wheeler, and Agema V. Wheeler (now Agema W. Dennett).

[7] It is conceded that Maria A. Bird is seised of and vested with all the right, title, and interest of the above-named parties. Owning, therefore, the fee of the property in question—that is, this highway to the center line thereof—and the easement of the highway having been extinguished by nonuser and abandonment, she is now entitled to the surplus arising out of the sale for taxes in 1896, unless the plaintiff has established a title in fee by adverse possession.

[8, 9] The plaintiff claims that when the highway was abandoned some time after 1869 it remained in possession until the sale for taxes in 1896, and at that time had acquired, through adverse possession, title in fee. The record title being in Maria A. Bird and her grantors, the burden was upon the plaintiff to prove this adverse possession, and this it has failed to do. Its grantor at the time of the abandonment of the highway—and of course, the exact day cannot be known—was and had been in lawful possession of this highway and of the property constituting it for a great number of years. If, therefore, it continued to remain in possession of the property, it will be presumed that its acts were under its original right to an easement only until it did something to evidence a hostile holding to the owner of the fee and a claim on its part to be the holder in fee. This property, even after it was abandoned as a plank road in 1869, and down to 1896, was still open property and people used to walk through it at all times. There were fences on the side of it separating the adjoining property, but it still retained its appearance as a roadway and was used by pedestrians as such. Certainly this was not a user by the plaintiff or its predecessors under claim of title in fee and in hostility to the owner of the record title.

The possession, to be adverse, culminating after 20 years in fee title, must be actual, visible, exclusive, and hostile. If the plaintiff or its grantors retained any possession whatever, the character of that possession did not change from what it had been when the property was used as a plank road. There is no evidence that it was ever used by the plaintiff for anything else, or that the fences maintained were other than those which had been there during the existence of the highway as a public road.

[10] It is true that this property was assessed to the Jamaica & Brooklyn Railroad Company, and that an action was brought by it against the city to avoid taxation, in which it was defeated. If payment of taxes be no evidence of possession (Archibald v. New York Central & Hudson River Railroad, 157 N. Y. 574, 52 N. E. 567; Mil-

ler v. Long Island Railroad, 71 N. Y. 380), failure to pay taxes cannot be. This property in question was sold in 1896 by reason of said railroad company failing to pay its taxes. It now seeks to use its default as evidence of title.

[11] In 1888 the Jamaica & Brooklyn. Railroad Company commenced an action against the city of Brooklyn to restrain it from removing its poles and wires from the roadway including the property in question. This action went by default, and judgment was entered in July of 1888 restraining the defendant from interfering with the plaintiff's property, alleged in the complaint to be electric poles and wires. There is nothing in the pleadings or judgment roll to indicate that the plaintiff claimed title in fee in the roadway or anything more than a rightful possession of the roadway and the ownership of the poles and wires therein. Being in possession, it had a good case against the city of Brooklyn, which had no right whatever to the property; it not being a public street. But the owner of the fee was not a party to this action and could not be bound by any judgment taken therein.

[12] The fact that the plaintiff has undertaken to convey a portion of this roadway other than the property in question is likewise no evidence of possession or adverse interest. Seymour v. Creswell, 18 Fla. 29; Worth v. Simmons, 121 N. C. 357, 28 S. E. 528.

"A possession, to be adverse, must be inconsistent with the title of the claimant; it must be accompanied with a claim of title exclusive of the rights of all others, and must be definite, notorious, and continued for the period of 20 years." Humbert v. Trinity Church, 24 Wend. 587. See, also, Treadwell v. Inslee, 120 N. Y. 458, 24 N. E. 651; Lewis v. New York & Harlem River Railroad Company, 162 N. Y. 202–220, 56 N. E. 548; Bedell v. Shaw, 59 N. Y. 46–50.

This the plaintiff has failed to prove.

Upon the agreed statement of facts and the testimony supplementary thereto I give judgment for the defendants.