(109 App. Div. 241)

TARPLEE v. SONN.

(Supreme Court, Appellate Division, Fourth Department. November 29, 1905.)

1. DEEDS—ESTATE CONVEYED—TITLE.
    Where an owner of certain land died intestate, survived by his widow
    and one son, and the son conveyed to his mother an undivided two-
    thirds of the premises during her natural life, to take the property ab-
    solutely in case she survived him, her dower right never having been
    admeasured, the widow only acquired a life estate in two-thirds of
    the property, which matured into a freehold on the death of the son
    during her life.

2. TENANCY IN COMMON—ADVERSE POSSESSION—NOTICE.
    Where at the time a widow interposed a claim of adverse possession
    in a suit for partition her only right to possession was under a deed
    from her son to an undivided two-thirds of the property, at which time
    controverted questions of title could not be tried in such action, and an
    investigation would not have disclosed anything on which she could have
    based her claim of adverse possession as to the other third, the claimant
    of such third was not charged with notice that she was an adverse oc-
    cupant of such third by her allegation in such suit.

3. ADVERSE POSSESSION—COLOR OF TITLE.

A sheriff's deed to land, sold under execution, though actually conveying nothing, is sufficient to constitute color of title, under which the grantee may acquire an absolute title by adverse possession.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 445, 446.]

4. TENANCY IN COMMON—ADVERSE POSSESSION.

One tenant in common may assert an adverse title against his co-tenant if his holding is adverse and to the exclusion of such co-tenant.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Tenancy in Common, §§ 42–49.]

5. ADVERSE POSSESSION—COLOR OF TITLE—RECORD.

The recording of a sheriff's deed is not essential to its operation as color of title to sustain a title by adverse possession.

6. TENANCY IN COMMON—ADVERSE POSSESSION—EVIDENCE.

A widow held possession of an entire farm under a deed conveying two-thirds thereof. She denied the title of a purchaser of the other third under an execution against her son, and permitted no joint possession. She thereafter purchased such third under another execution against the son, and thereafter held possession thereunder for the period of limitations. *Held*, that she thereby acquired title to such undivided third by adverse possession as against the prior purchaser thereof.

Appeal from Judgment on Report of Referee.

Action by Caleb Tarplee against Isaac H. Sonn. From a judgment in favor of plaintiff on a referee's report, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Morris A. Lovejoy, for appellant.

Irving G. Botsford, for respondent.

SPRING, J. John Terry died intestate prior to May 28, 1863, seised in fee of the premises described in the complaint, and leaving, him surviving, his widow and one son, John H. Terry. On May 28, 1863, the son conveyed to his mother an undivided two-thirds of said premises during her natural life, and in the event she survived him her title was to become absolute. John H. Terry therefore owned in fee an undivided one-third of the premises, subject to an unassigned dower interest of his mother in the entire farm, and in case he survived his mother his ownership would extend to the entire premises. His mother had a life estate in two-thirds thereof, which matured in a freehold title upon the death of her son in 1898. Judgments were recovered against John H. Terry, and executions were issued, and his interest sold by virtue thereof, and in January, 1873, the sheriff executed a deed to Stephen O. Barnum, conveying to him the interest of John H. Terry in said premises. In June of that year Barnum conveyed to one Winegar, and the defendant's title is derived from Winegar. The plaintiff acquired his title in 1900 by warranty deed from Mrs. Lent, and all these deeds were recorded shortly after they were respectively executed. There were irregularities in the sheriff's sale, or antecedent to it, but we will assume that the sale and consequent deed transferred to Barnum the interest in the premises possessed by the judgment debtor, Terry. In 1873 Winegar commenced an action for the partition of the lands and premises against Mrs. Lent.

In her answer, which was verified in December, 1873, she impeached the validity of the sale under the execution, and then interposed the affirmative defense of adverse possession. That action has never been tried. It is asserted that, because she claimed to be the owner of the premises as an adverse occupant, Winegar was apprised of her claim, and having allowed that demand to slumber unassailed for more than 20 years, it is too late for him now to maintain that she was occupying solely as life tenant and dowress.

We do not give quite the scope to this position claimed for it by the counsel for the respondent. When Mrs. Lent interposed the defense of adverse possession, concededly there was no muniment of title on which to found her claim. She was in possession by virtue of the deed from her son, possibly claiming also because of her unadmeasured dower right. If Winegar, appreciating that he was put upon inquiry to ascertain the validity of her claim, had made the most thorough investigation available, he would have discovered nothing upon which her assertion of title by adverse possession could vest. At that time, in an action of partition, controverted questions of title could not be tried as is now permissible. Code Civ. Proc. § 1543; Satterlee v. Kobbe, 173 N. Y. 91–95, 65 N. E. 952; Weston v. Stoddard et al., 137 N. Y. 119, 33 N. E. 62, 20 L. R. A. 624, 33 Am. St. Rep. 697. The interposition of the hostile title, therefore, ousted the court of jurisdiction, and the action of partition was never tried. It did apprise Winegar that Mrs. Lent was not relying exclusively upon her record title, and there are one or two other suggestions pertaining to the defense of more or less significance, to which we will allude later on. Mrs. Lent, in 1873, obtained a judgment in the Supreme Court against her son, John, and a sale of his interest in these premises by the sheriff, pursuant to an execution on this judgment, was had in August, 1874, at which she bid off the premises, and in February, 1876, she obtained the usual sheriff's deed, purporting to convey to her all the interest of the judgment debtor in the premises. It will be noted that this sale and deed were subsequent to the verification of the answer in the partition action. Mrs. Lent continued in the undisputed possession of the whole of said premises until she conveyed the same to the plaintiff, who has since continued in like occupancy thereof. Mrs. Lent had no title to the undivided one-third of said premises, except such as she acquired by this sheriff's deed. It is only that one-third which is involved in this case, for her ownership of the undivided two-thirds is unquestioned. She founds her claim of adverse possession upon this sheriff's deed. We may assume that she acquired no legal title by the deed, and concede that Barnum, by the prior execution sale and deed, became vested with all the interest of John H. Terry in the premises. It was sufficient, even though actually conveying nothing whatever, to found a tangible successful claim of adverse possession if such possession continued sufficiently long to ripen into an absolute title.

It is conceded that her physical possession and that of her grantee embraced the entire farm. She was not holding in subordination to her title as purchased from her son. Her answer in the partition action indicates that she was not resting wholly upon that title. She

knew Winegar claimed to own this disputed one-third. She purchased the interest of her son at the sheriff's sale, paying over $2,000 therefor, apparently to test the validity of Winegar's title, or to protect herself against it. In the event of her success in that venture, her own title to the whole farm would be assured. But Winegar made no move. He allowed her and the plaintiff to continue her occupancy without interference for 30 years, and then his grantee was not the attacking party, but defends when the contrary claims are sought to be determined and quieted. It is well settled that one tenant in common may assert an adverse title against his co-tenant, if only it be adverse and to the exclusion of the co-tenant. Florence v. Hopkins, 46 N. Y. 182; Sweetland v. Buell, 164 N. Y. 541, 58 N. E. 663, 79 Am. St. Rep. 676; Zapf v. Carter, 70 App. Div. 395, 75 N. Y. Supp. 197.

To sustain the judgment, we are not obliged to go to the extent of invoking the rule just adverted to. There were two deeds covering the same interest in the premises, and inevitably they must erect titles in hostility to each other. Each deed could not convey a valid effective title. Mrs. Lent's deed was not recorded until 1898, and it is urged that Winegar or his successor knew nothing of its existence. The sale was publicly made by the sheriff after the publication of the requisite notice. Passing that, however, the record of the deed was not essential to the acquirement of title under it by holding adversely. If Winegar desired to question Mrs. Lent's ownership, it was incumbent upon him to ascertain by what right she was claiming. The rule which often obtains, that where a tenant in common purchases an outstanding title, it must inure to the benefit of all the co-owners, does not apply in this case. From the outset, Mrs. Lent denied the title of Winegar. She permitted no joint possession, no recognition of his interest, but, on the contrary, at the only time he ever asserted ownership she disputed his claim. The rule mentioned is merely one of presumption, and is a corollary to the proposition that the possession of one tenant is assumed to be that of his co-tenants. If the facts denote that the possession was hostile to the other owners, instead of in harmony with them, the presumption is overthrown. Cases cited. The rule is thus expressed in Wood on Limitations, vol. 2, par. 266 (2d Ed.):

"Prima facie, the possession of one tenant in common is the possession of all; * * * but if one tenant in common enters upon the whole land, and takes the entire profits, claiming and holding exclusively for the full statutory period, an actual ouster of his co-tenants may be presumed."

Nor do we subscribe to the argument of counsel for the appellant that Winegar or his grantee was unable to assert his title as against Mrs. Lent during all this time. She had no claim to the undivided one-third owned by her son, except such as she acquired by the sheriff's deed. He conveyed to her only two-thirds, and her dower was unadmeasured, and gave her no right to retain this one-third, which is the only portion ever in dispute. Winegar could have maintained an action of ejectment to recover possession of this one-third as soon as she disputed his title. If she had recognized his co-tenancy, partition would have been proper. When she challenged his title or interest, he

should have endeavored to establish its validity at once. The moment that right was available to him, her possession became adverse.

We think the judgment should be affirmed, with costs.

Judgment affirmed, with costs and disbursements. All concur.