VILLAGE OF MANCHESTER, Plaintiff, *v.* EUNICE POST
and FRED POST, Defendants.

(Supreme Court, Ontario Equity Term, November, 1916.)

Ejectment — action for — continuous occupation and possession — adverse possession — title — judgments.

> Where in ejectment against husband and wife it appears that she had entered into possession of the premises in question, a strip of land thirty-three feet wide adjoining a public park and which afforded the only way for her and her predecessors in title to reach her lands in the rear from a public street, and that there had been a continuous occupation and possession of the premises by her and her predecessors in title for upwards of forty years under the same claim, she must be deemed to have held adversely and that she had a good title thereto by adverse possession and is entitled to judgment for a dismissal of the complaint and adjudging her to be the owner of the premises.

ACTION in ejectment. Defense, adverse possession.

Frank A. Christian (Leonard B. Bacon, of counsel), for plaintiff.

Willis C. Ellis, for defendants.

CLARK, J. This is an action in ejectment. Defendants are husband and wife. In the summer of 1914 they were in possession of a strip of land thirty-three feet wide on Clifton street in the village of Manchester, which is the property here in dispute. Plaintiff began the erection of a village hall on portions of said property, claiming to own it, and both defendants interfered with plaintiff's representatives, and ordered them off the property. What Fred Post did in the matter he did individually and not as

agent of his wife, and he was, therefore, properly made a party defendant in this action.

Plaintiff's source of title to the land in question is a deed, executed by George Willson, 2d, as executor of Jared Willson, deceased, and others, to Gardner & Sheldon, and is dated December 11, 1851.

Defendant Eunice Post claims title to the property under a deed from Louie Bement, dated April 1, 1903, and the Bement title is derived from a deed from Peter Cooper, dated May 7, 1892. Peter Cooper acquired title to this precise strip of property under a deed from Burrus Osgood, as attorney for Sarah Salt and others, dated September 28, 1874, and the Peter Cooper title is traced back to a deed from the executors of the estate of Jared Willson, deceased, to Moses Power, Jr., dated November 16, 1853. By that deed this strip of land, with other lands, was expressly excepted from the transfer, so that, although Eunice Post claims title under conveyances going back to Peter Cooper, the latter never had title to the lands in question, and consequently could not convey any, the first deed conveying these lands being the deed of 1851, from the executor of Jared Willson, deceased, to Gardner & Sheldon, which is the source of plaintiff's title. Defendant's claim to the ownership of this land must, therefore, rest upon her claim of title thereto by adverse possession.

Prior to 1874 Peter Cooper was the owner of lands in the rear of the thirty-three foot strip in question. These lands adjoined a common, which is now the village park, and over which lands at that time Mr. Cooper reached his residence, blacksmith and wagon shop, then standing on the lands in the rear of the lands in question. He had no means of reaching a street excepting over this village common, and presumably being desirous of having a right of way to

a street of his own, on September 28, 1874, he purchased this thirty-three foot strip of land of Burrus Osgood, as attorney for Sarah Salt and others, and immediately went into possession of the property.

Shortly after this purchase Mr. Cooper built on the east side of this thirty-three foot strip, and along the east line, a wall from three to four feet high, and that formed the easterly wall upon which he subsequently located a wagon shop, which was moved from his premises in the rear to the northeast corner of the strip of land in question. This wagon shop was twenty-two feet wide east and west, and about thirty feet deep. The easterly wall, which had been placed there by Peter Cooper, and which was practically on the easterly line of the lot in question, extended further south than the southerly end of the wagon shop, and to a point very near the other lands of Peter Cooper. Mr. Cooper used and occupied this wagon shop and the thirty-three foot strip on which it was located, and the whole of it, from that time until the year 1879, when the shop was destroyed by fire, whereupon he filled up the wagon shop cellar, and rebuilt his blacksmith shop on other lands which he owned in the rear of the thirty-three foot strip, and from that time down to the summer of 1914 this thirty-three foot strip has been used continuously as a passage way by Peter Cooper, and his successors in title, affording them a means of reaching Clifton street from his lands in the rear, upon which stood, and now stands, the Peter Cooper dwelling and blacksmith shop. He also used the said strip for storing wagons and agricultural implements brought to said shop for repairs, and on the southwest corner of the strip in question there has been maintained a mill stone, which Peter Cooper and his successors in title used for the purpose of setting tires on wagons.

The strip of land in question has been used and occupied by Peter Cooper, and his successors in title, including this defendant, under color and claim of title thereto, for the business pertaining to this blacksmith shop, openly, notoriously, and to the exclusion of every other claim or right, since 1874, and down to the summer of 1914, when plaintiff attempted to build its village hall on portions of the land in question.

Peter Cooper not only built the east wall above referred to, but he also assisted in building a wall marking the westerly line of said lot where it adjoins what is now the village park. This was not much of a wall, being more in the nature of a row of stones, but it was a sufficient monument to mark the division line on the west side of the lot in question, and, in view of the purposes for which the lot was used, it was sufficient to be deemed a monument to mark one side of the inclosure.

Section 371 of the Code of Civil Procedure provides as follows: " Where there has been an actual continued occupation of premises, under a claim of title, exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no others, are deemed to have been held adversely."

Section 372 of the Code of Civil Procedure provides that under such circumstances the lands claimed to have been held adversely must have been protected by substantial inclosures, or have been usually cultivated or improved.

In determining whether or not the lands in question meet these requirements, regard must be had for the uses to which such lands are usually put in a village. This is a narrow strip of land affording the only way for defendant and her predecessors in title to reach her lands in the rear from a public street, and the size

Misc.]      Supreme Court, November, 1916.

and location of the lot precluded the possibility of its being used for agricultural purposes. It was used all these years to reach the dwelling house of defendant and her predecessors in title, and for purposes connected with the business that they conducted on their lands in the rear. This use and occupancy was under color and claim of title, and was actual, open, notorious, and in hostility to any other claim or title, and had been such continuously for nearly forty years before plaintiff or anybody else raised any question with reference to defendant's rights thereto.

This possession and occupation was accompanied by the usual acts of ownership that would be found in cases of this character. There was no timber on the land, its location was such that it could not well be used for agricultural purposes. It was used for business purposes, and that openly and notoriously, and in such a manner that the record owners of the property, who owned and occupied the land next east of it, had ample notice and knowledge of the hostile claim of the defendant and her predecessors in title.

Under these circumstances they were called upon to assert their legal title, and not sit supinely by for nearly forty years, raising no question as to the claim of defendant and her predecessors in title. In order to establish title by adverse possession it is not necessary that defendant's claim of title under the Peter Cooper deed should actually be a valid one. Her claim of adverse possession would be sufficient even though her deed actually conveyed nothing, if her possession continued a sufficient length of time so it ripened into an adverse possession. *Tarplee* v. *Sonn,* 109 App. Div. 241; *Monnot* v. *Murphy,* 207 N. Y. 240; *Baker* v. *Oakwood,* 123 id. 16; *Barnes* v. *Light,* 116 id. 39.

Defendant entered into possession of these premises,

and the whole of them, under color and claim of title, exclusive of every other right, and there has been a continued occupation and possession of the premises by her, and her predecessors in title, for upwards of forty years under the same claim.

Under these circumstances the premises must be deemed to have been held adversely, and that defendant Eunice Post has established a good title thereto by adverse possession.

Judgment is, therefore, directed in favor of defendants, dismissing plaintiff's complaint, and adjudging that Eunice Post is the owner of the lands in question.

Judgment accordingly.