GLENN D. HALL et al., Respondents, v MARGARET W. SINCLAIRE et al., Appellants. [826 NYS2d 706]—

In an action, inter alia, for a judgment declaring that a certain 117-square-foot portion of the defendants' driveway encroaches upon the plaintiffs' property, the defendants appeal from a judgment of the Supreme Court, Westchester County (Tolbert, J.), dated March 31, 2005, which declared, inter alia, that the disputed portion of the driveway belongs to the plaintiffs, authorized the plaintiffs to remove the driveway encroachment, and dismissed the defendants' counterclaims seeking title to the disputed portion of the driveway by adverse possession.

Ordered that the judgment is reversed, on the law, with costs, it is declared that the disputed portion of the subject driveway does not belong to the plaintiffs, and the defendants Margaret W. Sinclaire, and Margaret W. Sinclaire, as trustee of the Sinclaire Qualified Residence Trust, are awarded title to the disputed parcel by adverse possession.

The plaintiffs are the owners of residential property that abuts residential property owned by the defendants. They commenced this action, inter alia, for a judgment declaring that a certain 117-square-foot area on the northern edge of the defendants' driveway (hereinafter the disputed area) encroaches

upon their property and may be removed. The defendants, inter alia, counterclaimed for title to the disputed area by adverse possession. After a nonjury trial, the Supreme Court awarded judgment in favor of the plaintiffs and against the defendants. We reverse.

In reviewing a determination made after a nonjury trial, the power of the Appellate Division is as broad as that of the trial court and it may render the judgment it finds warranted by the facts, taking into account that in a close case the trial judge had the advantage of seeing and hearing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 499 [1983]; *Healy v Williams,* 30 AD3d 466 [2006]). Here, the relevant facts are not in dispute and may be summarized as follows: Prior to 1968 the two subject properties were a single parcel on which a nursing home was located. During that former use and until 1977 a semi-circular driveway entered the parcel at the northwest corner, traversed the property, and then exited at the southwest corner. At a point approximately three quarters of the way around the driveway as measured from the northwest corner, the driveway looped into a circular drive. When the property was divided into two parcels, the north/south property line was located so that it divided the driveway through the northern edge of the circular drive. Thus, after the division, the bulk of the circular drive and that portion of the driveway to the south of the same was on the parcel now owned by the defendants. The remaining 117-square-foot northern edge of the circular drive (the disputed area) and the driveway to the north of the same was on the parcel now owned by the plaintiffs.

In 1977, predecessors-in-interest to the parties entered into an agreement entitled "Renunciation and Release" or "Release of Driveway," which provided, in relevant part:

"WHEREAS, there was formerly a common driveway located on both properties prior to the parties acquiring their respective properties, which driveway still exists, . . .

"THE RESPECTIVE PARTIES DO HEREBY AGREE AS FOLLOWS:

"1. Neither has used that portion of the said driveway located on the other's premises.

"2. Each of the respective parties hereby forever mutually renounce and release any rights they may have had to the use of that portion of the said driveway located on the property of the other.

"3. This Agreement shall be binding upon the heirs, assigns and successors in interest to the parties hereto."

At the time, the semi-circular driveway was still intact. However, also in 1977, predecessors-in-interest to the parties agreed to remove a section of the semi-circular driveway to the north of the circular drive (referred to at trial as "the connector") and to plant in the area of the section removed. Consequently, the driveway ceased to be continuous and became, in effect, two separate driveways. From that point forward, the defendants and their predecessors-in-interest made exclusive use of the whole of the circular drive and performed all required maintenance, etc. (e.g., plowing and resurfacing). At trial, a predecessor-in-interest to the defendants, who purchased the property in 1969 and sold it to the defendants in 1993, testified that she always believed that the whole of the circular drive was on her property. The defendants were made aware that the disputed area encroached upon the plaintiffs' property pursuant to a survey made near the time they purchased the property. In 2001 the defendants erected a six-foot tall fence around the northern edge of the circular drive. This action ensued. We hold that, tacking the defendants' use to that of their predecessors-in-interest, the defendants proved by clear and convincing evidence that they obtained title to the disputed area by adverse possession.

A party seeking to obtain title by adverse possession on a claim not based upon a written instrument must show that the parcel was either "usually cultivated or improved" (RPAPL 522 [1]) or "protected by a substantial inclosure" (RPAPL 522 [2]; see Beyer v Patierno, 29 AD3d 613 [2006]). In addition, the party must prove by clear and convincing evidence the common-law requirements of adverse possession, to wit: (1) that the possession was hostile and under claim of right; (2) that it was actual; (3) that it was open and notorious; (4) that it was exclusive; and (5) that it was continuous for the statutory period of 10 years (see Walling v Przybylo, 7 NY3d 228 [2006]; Beyer v Patierno, supra). "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period" (Brand v Prince, 35 NY2d 634, 636 [1974]). "The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period" (Monnot v Murphy, 207 NY 240 [1913]; see Walling v Przybylo, supra).

Here, all these elements were met. We do not read the 1977 "Renunciation and Release" or any other evidence in the record as demonstrating that the parties' predecessors-in-interest were

aware that the disputed area encroached upon what is now the plaintiffs' property, and that the use of the same by the defendants' predecessors-in-interest was by permission as a matter of willing accord and neighborly accommodation, thereby defeating a claim of adverse possession (*see Koudellou v Sakalis*, 29 AD3d 640 [2006]; *Kelly v Schwend*, 15 AD3d 450 [2005]). Rather, the clear intent of the 1977 agreement, given that the driveway was then still intact and traversed both properties, was merely to extinguish each parcel owner's right to use that portion of the driveway located on the other's parcel. Indeed, even if the previous owners were mistaken about the actual location of the property line, this would not defeat the defendants' claim. As this Court held in *Gore v Cambareri* (303 AD2d 551, 553 [2003] [citations and internal quotation marks omitted]): "the Supreme Court erred in holding that the parties' mutual mistake concerning the location of the borderline between the properties negated a finding [of] hostile possession. [Hostile possession] does not require a showing of enmity or specific acts of hostility . . . All that is required is a showing that the possession constitutes an actual invasion of or infringement upon the owner's rights . . . Consequently, hostility may be found even though the possession occurred inadvertently or by mistake."

Finally, the defendants' claim was not defeated because they were aware that the disputed area was actually owned by the plaintiffs. In a recent case concerning adverse possession, the Court of Appeals explained: "Defendants argue that there is no claim of right when the adverse possessor has actual knowledge of the true owner at the time of possession. However, longstanding decisional law does not support this position. The adverse possessor must act under claim of right. By definition, a claim of right is adverse to the title owner and also in opposition to the rights of the true owner. Conduct will prevail over knowledge, particularly when the true owners have acquiesced in the exercise of ownership rights by the adverse possessors." (*Walling v Przybylo, supra* at 232-233 [citations omitted].) In sum, the defendants acquired title to the disputed area by adverse possession. Ritter, J.P., Goldstein, Rivera and Spolzino, JJ., concur.