OPINION OF THE COURT
Thomas P. Phelan, J.
Motion (sequence No. 1) by plaintiffs for an order pursuant to CPLR 3212 granting summary judgment in favor of plaintiffs (a) declaring plaintiffs’ ownership in fee simple by adverse possession in the real property that is the subject of this action, (b) barring defendants under articles 5 and 15 of the Real Property Actions and Proceedings Law from claiming any right, title or interest in the subject real property, and (c) dismissing defendants’ affirmative defenses and the counterclaim of defendants Gary and Joann Van Wicklen is granted. Cross motion (sequence No. 2) by defendant Nassau County for an order pursuant to CPLR 3212 dismissing the complaint and granting summary judgment in favor of defendant Nassau County is denied.
Plaintiffs bring this action to quiet title to real property located in Nassau County and designated as section 50, block 304, lot 123. Lot 123 is a 20-foot-by-130-foot parcel contiguous to lot 122. Together lots 122 and 123 form one unified 80-foot-by-130-foot area.
Plaintiffs purchased both lots 122 and 123 in 1981 from Nick V. Alfonsina DeSanctis. Lots 122 and 123 front the southerly side of Decatur Avenue in North Bellmore, are improved by a single-family residence and related amenities and have been occupied by plaintiffs and their children since that time. The property street address is 1968 Decatur Avenue, North Bellmore, New York. The Ammiratis acquired title to lot 122 and lot 123 as follows: (a) lot 122 by deed dated October 15, 1981 from Nick V. DeSanctis, which was recorded on November 20, 1981 in the Nassau County Clerk’s Office in deed liber 9379, page 111; and (b) lot 123 by deed dated October 15, 1981 from Nick V. DeSanctis, which had not been recorded.
The deed conveying title to lot 122 was a recorded bargain and sale deed with covenants against grantor’s acts. The deed for lot 122 states that DeSanctis acquired title in 1969. The unrecorded quitclaim deed for lot 123 does not state when De-Sanctis acquired title to lot 123. However, plaintiffs claim they acquired title to and possession of lot 123 on October 15, 1981, from DeSanctis who was allegedly in title and possession on said date.
*954 Defendant Nassau County claims it has superior title to lot 123. The County took title to lot 123 under a tax deed dated May 9, 1989, recorded in the Nassau County Clerk’s Office on May 16, 1989. Because the County may own lot 123 by virtue of a tax deed, plaintiffs’ ownership claim is based on adverse possession of lot 123. Defendants Gary C. Van Wicklen and Joann E. Van Wicklen claim that in 2005 Nassau County offered lot 123 for sale, soliciting bids from both the Van Wicklens and plaintiffs. The Van Wicklens live next door to plaintiffs, at 1958 Decatur Avenue, North Bellmore, New York, which parcel is also contiguous to lot 123. Due to the within adverse possession claim, defendant County has not as yet delivered its deed to the Van Wicklens, who assert they are ready, willing and able to purchase lot 123 for the bid price of $25,000.
In support of their motion, plaintiffs proffer their joint affidavit sworn to March 10, 2007, the deposition testimony of Nassau County by Sean T. Rainey and the deposition testimony of defendant Gary C. Van Wicklen. At his deposition, Mr. Van Wicklen testified he was born on July 27, 1953 and has been living next door to lot 123, at 1958 Decatur Avenue, for over 53 years. He and his wife have resided at 1958 Decatur Avenue since their marriage in 1976. Mr. Van Wicklen testified that a chain-link fence, installed when he was a child, separated 1958 Decatur Avenue from lot 123. The chain-link fence was installed along the entire westerly boundary of lot 123. The chain-link fence extends 130 feet from the front of the property to the rear, meeting with a concrete retaining wall also installed in the 1960s when he was a child. As a consequence, lot 123 was physically separated from the Van Wicklen property and formed a part of the Ammirati property. At his deposition, in describing the conditions on lot 123, defendant Van Wicklen stated that the chain-link fence separating the Van Wicklen property from lot 123 has been the same for as long as Mr. Van Wicklen could remember. Moreover, it is undisputed that plaintiffs’ landscaper has always taken care of the lawn and bushes in lot 123 and otherwise exercised dominion and control of lot 123 including installation of additional fencing, a shed, and a stone garden as well as both planting and removal of various trees.
Despite the tax proceedings initiated by the County in 2005, plaintiffs assert they have been in possession of lot 123 continually and exclusively of anyone else from 1981 to the present pursuant to an unrecorded quitclaim deed. Long before the County tried to sell lot 123, plaintiffs contend they affirmatively *955 asserted their ownership of lot 123 in a letter dated March 27, 2001 to the County’s Bureau of Real Estate and Insurance. The letter states as follows:
“In reply to your recent letter about the parcel of land adjacent to our property, we do object to the sale of this land.
“This property is fenced in as part of our yard, and we have been maintaining it since we purchased our home. We have shrubs and grass planted on this land, and we pay a lawn service to maintain it.
“Also, we have a quitclaim deed from the previous owner, Nicholas DeSanctis, for this land. Please find copy of this enclosed.
“Please advise, as this parcel of land has been part of our yard since we purchased our home, and we would like to keep it that way.” (Affirmation in support, exhibit S.)
The bases for establishing a claim of adverse possession are well settled.
“A party seeking to obtain title by adverse possession on a claim not based upon a written instrument must show that the parcel was either ‘usually cultivated or improved’ (RPAPL 522 [1]) or ‘protected by a substantial inclosure.’ In addition, the party must prove by clear and convincing evidence the common-law requirements of adverse possession, to wit: (1) that the possession was hostile and under claim of right; (2) that it was actual; (3) that it was open and notorious; (4) that it was exclusive; and (5) that it was continuous for the statutory period of 10 years. ‘Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period. The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period.’ ” (Hall v Sinclaire, 35 AD3d 660, 662 [2006] [internal citations omitted].)
Assuming, arguendo, that the County took title to lot 123 in May 1989, plaintiffs have made a prima facie showing of entitlement to summary judgment by demonstrating that their adverse *956 possession of lot 123 thereafter ripened into good title as against the whole world no later than June 1999 — a date which is 10 years after any transfer of title to the County (and six years before the County’s attempted sale). (Zuckerman v City of New York, 49 NY2d 557 [1980]; Alvarez v Prospect Hosp., 68 NY2d 320.)
In opposing plaintiffs’ claim, the County relies on the principle that a municipality cannot lose title to real property by adverse possession when it holds the property in its “governmental” capacity (see, generally, Kings Park Yacht Club, Inc. v State of New York, 26 AD3d 357 [2006]; Monthie v Boyle Rd. Assoc., 281 AD2d 15, 20 [2001]; City of New York v Sarnelli Bros., 280 AD2d 573 [2001]; Casini v Sea Gate Assn., 262 AD2d 593, 594 [1999]; Litwin v Town of Huntington, 208 AD2d 905 [1994]). The County further asserts that property which the government acquired by tax deed and was held by the County for the eventual collection of real estate taxes is property taken by the County in its governmental capacity as a direct result of its powers to collect taxes.
Defendant County’s contentions are without merit. While immunity will generally attach to property held in a “governmental” capacity, such as a highway, public stream, canal and public fairground, there is no immunity available for property held in a so-called “proprietary” capacity (see, Starner Tree Serv. Co. v City of New Rochelle, 271 AD2d 681 [2000]; Casini v Sea Gate Assn., supra; see also Albany Parking Servs. v City of Albany, 3 AD3d 711, 712 [2004]; City of Tonawanda v Ellicott Cr. Homeowners Assn., 86 AD2d 118, 125-126 [1982]; Town of N. Hempstead v Bonner, 77 AD2d 567, 568 [1980]; cf. Karedes v Colella, 100 NY2d 45, 50). That a municipality takes land for tax collection purposes does not defeat an adverse possession claim if the subsequent purpose is merely resale, which is proprietary in nature and not a true governmental use (Casini v Sea Gate Assn., supra; see, also, Monthie v Boyle Rd. Assoc., 281 AD2d 15 [2001]). As stated in Casini (at 594-595), the Appellate Division, Second Department, held:
“[W]e find no merit to the plaintiffs’ claim that the Association could not acquire adverse possession to the property because the City foreclosed on the land in 1977 to satisfy tax liens. . . . [L]and which is held by a municipality in its proprietary capacity is not immune from adverse possession. . . . Thus, it has been observed that ‘[tihere is a well-recognized *957 distinction between lands held by the State as sovereign in trust for the public and lands held as proprietor only, for the purpose of “sale or other disposition” . . . such lands only as the State holds as a proprietor may be lost to the State; it cannot lose such lands as it holds for the public, in trust for a public purpose [such] as highways, public streams, canals, [and] public fairgrounds’ ” (internal citations omitted).
The County never used lot 123 for any purpose and “always intended [it would be] sold to someone” (deposition testimony of defendant County’s Deputy of Real Estate Planning and Development at 8-12). As a consequence, it is clear that lot 123 was held by the County in its proprietary capacity.
The County’s claim that its title to lot 123 cannot be divested by adverse possession because under CPLR 211 (c) the County has 20 years to bring an action in ejectment is incorrect. CPLR 211 (c) provides as follows:
“The state will not sue a person for or with respect to real property, or the rents or profits thereof, by reason of the right or title of the state to the same, unless the cause of action accrued, or the state, or those from whom it claims, have received the rents and profits of the real property or of some part thereof, within twenty years before the commencement of the action.”
The attorneys for the County refer to no statute or case to support their conclusion that the extension of the statute of limitations for state actions to 20 years pursuant to CPLR 211 (c) applies to the County.
In interpreting the statute we are guided by a well-settled principle of statutory construction: courts normally accord statutes their plain meaning, but “will not blindly apply the words of a statute to arrive at an unreasonable or absurd result.” (Williams v Williams, 23 NY2d 592, 599 [1969]; see also Matter of Rouss, 221 NY 81, 91 [1917]; Church of Holy Trinity v United States, 143 US 457, 460 [1892]; People v Santi, 3 NY3d 234 [2004].) It is equally well settled that “[i]n implementing a statute, the courts must of necessity examine the purpose of the statute and determine the intention of the Legislature.” (Williams v Williams, supra at 598.) Indeed, “[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a], at *958 176). Legislative intent drives judicial interpretations in matters of statutory construction (see, People v Allen, 92 NY2d 378, 383 [1998]; People v Santi, supra).
Adverse possession cases involving governmental entities other than New York State apply the standard limitations period set forth in CPLR 212 (a), which provides that “[a]n action to recover real property or its possession cannot be commenced unless the plaintiff, or his predecessor in interest, was seized or possessed of the premises within ten years before the commencement of the action.” In Starner Tree Serv. Co. v City of New Rochelle (271 AD2d 681 [2000]), the Court applied the 10- not 20-year period in a claim against a municipality (see, also, Greenman v City of Cortland, 141 AD2d 910 [1988]; Almor Assoc. v Town of Skaneateles, 231 AD2d 863 [1996]).
Contrary to the position of the County, the failure to pay real estate taxes on disputed property is not determinative of an adverse possession claim. Nor is payment of real estate taxes evidence of possession, either actual or constructive (Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154 [1996]; Greenleaf v Brooklyn, Flatbush & Coney Is. Ry. Co., 141 NY 395, 399 [1894]; Archibald v New York Cent. & Hudson Riv. R.R. Co., 157 NY 574, 583 [1899]).
The facts in Joseph v Whitcombe (279 AD2d 122 [2001]), cited by the Van Wicklens, denying a claim of adverse possession by defendants Whitcombe as their occupancy was that of a “squatter,” can be distinguished from the within action. In Joseph (supra), defendants Whitcombe admitted when they first took possession that title was in another person, even though without knowledge of that person’s identity. In the within action, plaintiffs took possession in 1981 under a claim of title. While plaintiffs did offer to purchase the property in the summer of 2005 — an action arguably inconsistent with their current claims of ownership by adverse possession (Beyer v Patierno, 29 AD3d 613, 615 [2006]; Albright v Beesimer, 288 AD2d 577, 579 [2001]; Manhattan School of Music v Solow, 175 AD2d 106 [1991])— the 10-year prescriptive period had expired prior to the 2005 offer even when calculated from the County’s May 1989 tax deed (see, Posnick v Herd, 241 AD2d 783, 785 [1997]; New York State Elec. & Gas Corp. v Persson, 64 AD2d 194 [1978]). A claim of right will be defeated only if plaintiffs’ acknowledgment of another’s title is clearly shown by words or conduct and occurs during the statutory period (see, Walling v Przybylo, 7 NY3d 228 [2006]).
*959 Moreover, defendants’ contention that plaintiffs’ deed was not recorded is immaterial. In order to establish title by adverse possession it is not necessary that plaintiffs’ claim of title from the unrecorded quitclaim deed actually be a valid document. Plaintiffs’ claim of adverse possession would be sufficient even if the deed actually conveyed nothing, provided their possession continued a sufficient length of time so it ripened into adverse possession (Village of Manchester v Post, 97 Misc 451, 455 [Sup Ct, Ontario County 1916], citing Tarplee v Sonn, 109 App Div 241 [1905]; Monnot v Murphy, 207 NY 240 [1913]; Baker v Oakwood, 123 NY 16 [1890]; Barnes v Light, 116 NY 34, 39 [1889]; see also Walling v Przybylo, supra).
The court has considered all of the other arguments made by defendants and finds them to be without merit. Plaintiffs have established good title to lot 123 by adverse possession. Plaintiffs are declared the owners of lot 123.