Bahor v Tavares (2024 NY Slip Op 50817(U))

[*1]

Bahor v Tavares

2024 NY Slip Op 50817(U)

Decided on June 28, 2024

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 28, 2024
Supreme Court, Westchester County

Charles Bahor, Plaintiff,

against
Ilda Tavares and FILOMENA TAVARES, Defendants.

Index No. 69840/2018

Percival A. Clarke, Esq.
Attorney for plaintiff

Mario L. DeMarco, Esq.
Attorney for defendants
Robert S. Ondrovic, J.

On March 12, 2024, a nonjury trial was held regarding the causes of action in the complaint seeking, inter alia, a judgment declaring that the plaintiff is the owner of certain real property by adverse possession and an order directing the defendants to remove a fence that they installed on the disputed area. After considering the sworn testimony of the parties, the credibility of the witnesses, the documents admitted into evidence, and the plaintiff's closing statement, the Court makes the following findings of fact and conclusions of law:
Factual and Procedural History
The plaintiff, who resides in Indianapolis, Indiana, is the owner of certain real property located at 171 North Fulton Avenue, Mt. Vernon, NY. The property has been owned by his family since 1963 and is improved with a three-family residence and a carriage house/garage (hereinafter the carriage house). In 1998, he and his two brothers acquired an interest in the property and title was passed to them in 2001, upon the death of their step-mother. Pursuant to a deed dated March 1, 2002, the plaintiff became the sole owner of the property.
The defendant Ilda Tavares (hereinafter Ilda), and her daughter, the defendant Filomena Tavares (hereinafter Filomena, together with Ilda, the defendants), are the owners of adjacent [*2]property located at 159 North Fulton Avenue, Mt. Vernon, NY. The defendants' property is contiguous to the southern property line of the plaintiff's property.
Since prior to 1963 up until 2017, the subject properties were separated by a chain link fence. The distance between the carriage house and the chain link fence was approximately three feet and eleven inches. The chain link fence ran approximately 60 feet in length from the carriage house to a stone retaining wall located on the plaintiff's side of the fence. In 2017, the defendants obtained a survey which reflected that their property line extended approximately 2 ½ feet beyond the chain link fence. The area between the chain link fence and the property line (hereinafter the disputed area) was improved by an asphalt driveway, a gate leading to the plaintiff's backyard, and a portion of the retaining wall. 
In December 2018, the plaintiff commenced an action, inter alia, for a judgment declaring that he has a prescriptive easement over the disputed area (first cause of action), a judgment directing the defendants to remove a stockade fence they installed on the disputed area (second cause of action), a judgment declaring that he is the owner of the disputed area by adverse possession (third cause of action), and an award of damages in the amount of $100,000 (fourth cause of action).
The plaintiff alleged that since 1963, he and his predecessors continuously used the disputed area openly, notoriously, adversely, and under a claim of right as a side yard and driveway. He alleged that in November 2017, the defendants removed the chain link fence and installed a six-foot high wooden stockade fence without his permission and without the required permits. The plaintiff alleged that the stockade fence encroaches more than four feet onto his property and prevents him from using a portion of his driveway and the southerly portion of his property.
In January 2019, the defendants answered the complaint and asserted, inter alia, numerous affirmative defenses including that the plaintiff's encroachment on the defendants' property constituted a trespass.

 The Trial
A nonjury trial was held on March 12, 2024. The plaintiff testified as follows:
The plaintiff's property is improved with a three-family residence and a carriage house/garage. The property has been owned by his family since 1963. When the plaintiff's family purchased the property, there was an existing chain link fence "[o]n the south border of where the carriage house was" and a 48 inch wide gate leading to the backyard.[FN1]
The chain link fence was located "from the corner of the carriage house down to a retaining wall on the western side of that southern border."[FN2]
The distance between the carriage house and the chain link fence was approximately four feet.
When the plaintiff visited the property on November 6, 2017, he observed that the chain link fence had been removed. He was told by Filomena that "she had the property surveyed and that she was planning to put up a fence."[FN3]
The plaintiff expressed concern to Filomena that the [*3]new fence would "run[] up against the garage underneath the overhang" and "would compromise the retaining wall that supports the southwest corner of the driveway."[FN4]
The plaintiff suggested to Filomena that they come up with a "reasonable solution that would satisfy both [their] needs."[FN5]
When the plaintiff subsequently returned to the property, he observed that the defendants installed "a new wood stockade fence" located 2 ½ feet closer to the carriage house from where the chain link fence was located.
The stockade fence limits the plaintiff's access to his backyard and the carriage house, his ability to maintain the retaining wall, and encroaches upon 2 ½ feet of his driveway. The plaintiff can no longer park in front of the carriage house and cannot reinstall a gate because of the minimal distance between the stockade fence and the carriage house. The stockade fence has caused a portion of his driveway to crumble and sink because there is no "structural reinforcement."[FN6]
Before the stockade fence was installed, the defendants never objected to the plaintiff's use of that portion of the driveway or walkway to the backyard. The defendants never told the plaintiff that the disputed area belonged to them. The plaintiff's landscaper trimmed the hedges and maintained the shrubs because it was easier to do so from his side of the property.
On cross examination, the plaintiff conceded that the defendants obtained a permit to install the stockade fence and that the stockade fence was installed on the actual property line as reflected on the defendants' survey. He acknowledged that his father and Filomena's father had a cordial relationship and the first time an issue arose was "[w]hen the survey markers were put down."[FN7]
The plaintiff stated that it was his assumption and his father's assumption that the chain link fence was on the property line. He reiterated that due to the installation of the stockade fence, he lost use of the property between the chain link fence and the stockade fence, "[p]lus the deterioration of the driveway that's not allowing [him] to move up to that area."[FN8]

After the plaintiff rested, Filomena was called to the stand to testify on behalf of the defendants. Filomena testified as follows:
Filomena purchased the defendants' property with her parents and has been residing there with her mother Ilda since 2008. The plaintiff's parents and Filomena's parents always had a "good" relationship.[FN9]
Filomena arranged for the stockade fence to be installed in 2017, because the defendants had no privacy and the tenants who rented the plaintiff's garages "were always jumping over our fences."[FN10]
She had a survey done and obtained a building permit to install the stockade fence. The stockade fence was placed "two inches more on [the defendants'] side to give [the plaintiff] more room."[FN11]
The stockade fence does not prevent the plaintiff's access to his backyard and parking area since he has his own separate driveway. The defendants tended to the shrubs on their side of the chain link fence until the plaintiff offered for his landscaper to do so because it was difficult for Filomena's elderly father.
On cross examination, Filomena testified that her father, "a few times," mentioned to the plaintiff's father that the chain link fence was on the defendants' property.[FN12]
She confirmed that the stockade fence was not installed in the same location as the chain link fence, and was built on top of the plaintiff's asphalt driveway and halfway on top of the retaining wall. Filomena acknowledged that the entire time she has resided at the defendants' property, the plaintiff had made use of his entire driveway, including the portion that abutted the chain link fence, and the gate to access the back of the garage. 
At the close of testimony the Court directed counsel to submit closing statements to chambers within 30 days after receipt of the transcript.

Closing Statement [FN13]

In a closing statement, the plaintiff's attorney argued that the plaintiff's possession of the disputed area was hostile, open, notorious, exclusive, and under a claim of right. He contended, among other things, that the plaintiff installed and maintained the retaining wall, an asphalt driveway that ran the entire length of the chain link fence, and a gate which was attached to the carriage house and the chain link fence, and used that portion of the property to access the back of his premises. The plaintiff's attorney argued that there was no evidence that the plaintiff's use of the disputed area was with the consent or permission of the defendants. He also asserted, in the alternative, that the plaintiff established his right to possession of the disputed area under the doctrine of practical location. The plaintiff's attorney further argued that it was undisputed that the defendants caused damages to the plaintiff's asphalt driveway during the installation of the stockade fence.
The defendants did not submit a closing statement to the Court.

Analysis
In 2008, the Legislature enacted changes to the adverse possession statutes (see L 2008, ch 269; 5262 Kings Hwy., LLC v Nadia Dev., LLC, 121 AD3d 748, 748-49 [2d Dept. 2014]). Here, however, since title to the disputed area allegedly vested in the plaintiff by adverse possession in 2002 at the latest, the law in effect prior to the amendments is applicable (see Bullock v Louis, 188 AD3d 783, 784 [2d Dept. 2020]; Warren v Carreras, 133 AD3d 592, 594 [2d Dept. 2015]; 5262 Kings Hwy., LLC v Nadia Dev., LLC, 121 AD3d at 748-749). Accordingly, in order to establish a claim to property by adverse possession, the plaintiff was required to establish by clear and convincing evidence that "the possession was hostile and under claim of right; (2) it was actual; (3) it was open and notorious; (4) it was exclusive; and (5) it was continuous for the statutory period of 10 years" (Kelly v Bastianic, 93 AD3d 691, 693 [2d Dept. 2012]; see Slacer v Kearney, 151 AD3d 1602, 1603-1604 [2d Dept. 2017]). Additionally, [*4]where, as here, the claim of right is not founded upon a written instrument or a judgment or decree, the plaintiff was also required to demonstrate that the disputed area was "'usually cultivated or improved' or 'protected by a substantial inclosure'" (Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012], quoting RPAPL former 522; see Bursky v Gerratano, 184 AD3d 796, 797-798 [2d Dept. 2020]; Warren v Carreras, 133 AD3d at 594). 
"'Reduced to its essentials, this means nothing more than that there must be a possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period'" (Hall v Sinclaire, 35 AD3d 660, 662 [2d Dept. 2006], quoting Brand v Prince, 35 NY2d 634, 636 [1974]). "[Hostile possession] does not require a showing of enmity or specific acts of hostility All that is required is a showing that the possession constitutes an actual invasion of or infringement upon the owner's rights Consequently, hostility may be found even though the possession occurred inadvertently or by mistake" (Hall v Sinclaire, 35 AD3d at 663 [internal quotation marks omitted]). Furthermore, "[h]ostility can bee inferred simply from the existence of the remaining four elements, thus shifting the burden to the record owner to produce evidence rebutting the presumption of adversity" (Megalli v Yeager, 167 AD3d 860, 862 [2d Dept. 2018]). 
Here, the plaintiff established by clear and convincing evidence his entitlement to a judgment declaring that he is the owner of the disputed area by adverse possession (see Bursky v Gerratano, 184 AD3d at 798; Slacer v Kearney, 151 AD3d at 1604-1605; Warren v Carreras, 133 AD3d at 594; Kelly v Bastianic, 93 AD3d at 693-694). The parties' testimony and documentary evidence admitted at trial demonstrated that the disputed area had been enclosed by a chain link fence since prior to 1963, and that the plaintiff and his predecessors in interest maintained the asphalt driveway, a stone retaining wall, and a gate on his side of the chain link fence until 2017, when that fence was removed and the stockade fence was installed. The plaintiff's possession of the disputed area was not contested until 2017, when the defendants obtained the survey.
Filomena's vague testimony that her father had mentioned to the plaintiff's father that the chain link fence was on the defendants' property is insufficient to demonstrate that the plaintiff and his predecessors in interest used the disputed area with the permission of the defendants during the prescriptive period to rebut the presumption of adversity (see Megalli v Yeager, 167 AD3d at 862; see Correra v 60 Millwood Partners, LLC, 224 AD3d 728, 728 [2d Dept. 2024]; SLC Coram, LLC v 543 Middle Country Road Realty, LLC, 161 AD3d 1122, 1124 [2d Dept. 2018]). Moreover, "an adverse possessor's actual knowledge of the true owner is not fatal to an adverse possession claim" (Walling v Przbylo, 7 NY3d 228, 233 [2006]; see Salzberg v Sena, 204 AD3d 853, 856 [2d Dept. 2022]).
Nevertheless, the plaintiff failed to demonstrate his entitlement to an award of damages resulting from the installation of the stockade fence on the disputed area. The plaintiff failed to present any expert testimony or evidence to support his allegation that the deterioration of the asphalt driveway was caused by the stockade fence, especially given that the photographs of the disputed area prior to the installation of the stockade fence depicts significant cracking in the asphalt. In addition, there was no proof substantiating the plaintifff's claim that he has been damaged in the amount of $100,000 (c.f. Marone v Kally, 109 AD3d 880, 883 [2d Dept. 2013]).
In light of this determination, the Court need not consider the issue of whether the plaintiff is entitled to a judgment declaring that he has a prescriptive easement over the disputed area under the first cause of action — which the plaintiff does not address in his closing [*5]statement, or his contention that he is the owner of the disputed area based on the doctrine of practical location — an argument raised by the plaintiff for the first time in his closing statement.
Accordingly, it is hereby
ORDERED, ADJUDGED, and DECLARED that the plaintiff is the owner of the disputed area by adverse possession; and it is further,
ORDERED AND ADJUDGED that the defendants must remove the stockade fence installed on the disputed area and are enjoined from installing a fence in the future that would prevent the plaintiff from the use and enjoyment of the disputed area; and it is further,
ORDERED AND ADJUDGED that the defendants' affirmative defenses are dismissed; and it is further,
ORDERED that the plaintiff is directed to submit to the Court a proposed judgment on seven (7) days' notice, within thirty (30) days following entry of the instant decision and order.
Dated: June 28, 2024
White Plains, NY
________________________________
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:Transcript 3/12/2024 at 7 

Footnote 2:id. at 9

Footnote 3:id. at 13

Footnote 4:id.

Footnote 5:id. at 14

Footnote 6:id. at 22

Footnote 7:id. at 35

Footnote 8:id. at 39

Footnote 9:id. at 46-47

Footnote 10:id. at 47

Footnote 11:id. at 49

Footnote 12:id. at 51

Footnote 13:In his closing statement, the plaintiff analyzes the facts under the law of adverse possession and, notably, does not address the first cause of action in the complaint seeking a declaration that he has a prescriptive easement over the disputed area.