Montague v Yezol, Inc. (2024 NY Slip Op 24067)

[*1]

Montague v Yezol, Inc.

2024 NY Slip Op 24067

Decided on March 5, 2024

Supreme Court, Bronx County

Hummel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 5, 2024
Supreme Court, Bronx County

Chevelle Montague, ALFRED L. WASHINGTON, JR., and CAROLYN KING WASHINGTON, Plaintiffs,

against
Yezol, Inc., ENRIZ C. RAMIREZ, ZULMA CHARLOTEN, GILBERTO PENA, 
 1251 POLITE CORP., PHASE 2 DEVELOPMENT, LLC., 1251 REV JAMES LLC., and M.Y. SAFRA BANK, FSB., Defendants.

Index No. 31440/2020E

Plaintiffs 
Donald Novick, Esq.
Novick & Associates 
202 E. Main Street 
Suite 208
Huntington, NY 11743
631-547-0300
dnovick@novicklawgroup.com
Defendant 1251 Rev James
Peter Metis
Office of Peter Metis LLC 
46 Trinity Place,
5th Floor
New York, NY 10006 646-908-2468
pmetis@metislawoffice.com
Defendant MY Sabra Bank, FSB
Bill Tsevis, Esq.
Solomon & Siris 
100 Quentin Roosevelt Boulevard Suite 504
Garden City, NY 11530
516-228-9350
btsevis@solomonsiris.com

Veronica G. Hummel, J.

In accordance with CPLR 2219(a), the decision herein is made upon consideration of all papers filed by the parties in NYSCEF in connection with defendant 1251 REV JAMES LLC.'s motion ("1251 Rev James") (Seq. No. 5), made pursuant to CPLR 3212, seeking an order granting 1251 Rev James summary judgment dismissing the amended complaint and granting summary judgment on movant's counterclaim seeking an order quieting title in the subject property to 1251 Rev James, declaring any right, title or interest in the subject property held by plaintiffs CHEVELLE MONTAGUE, ALFRED L. WASHINGTON, JR. and CAROLYN KING WASHINGTON ("plaintiffs"), to have been extinguished through adverse possession and declaring 1251 Rev James to be the owner of good and valid title to the relevant property; and defendant M.Y. SAFRA BANK, FSB'S ("MYSB") motion (Seq. No. 6) seeking an order, pursuant to CPLR 3212, granting summary judgment in favor of defendant MYSB dismissing the amended complaint, and awarding judgment to defendant MYSB on its first counterclaim for a declaration that its $1,050,000.00 mortgage, as described in the underlying motion papers, is a valid mortgage lien on the subject real property on the ground that defendant 1251 Rev James, MYSB's mortgagor, has good and valid ownership of and title to the subject real property through adverse possession.
Oral argument on the motions was held before the Court on November 14, 2023. For the reasons discussed below, the motions are GRANTED.
The birthplace of this litigation is a property located at 1251 Rev James A. Polite Avenue, Bronx, NY ("the Property"). The Property is a corner property comprised of a commercial space and one residential apartment on the ground floor and two apartments located on the second floor. The commercial space is currently leased to a Deli. The other three residential apartments are all occupied and rented.
The central issue on the motions is the legal validity and effect of a number of title and possession transfers that occurred after a deed was forged in 1994. Of note, the material facts [*2]underlying the action are not in dispute.
In support of the motions for summary judgment, movant defendants submit copies of the pleadings, copies of various deeds and mortgages, personal affidavits by Cohen, Ramirez, Pena, and Aronov, deposition transcripts, Bankruptcy documents, an ACRIS index, Pacer dockets, attorney affirmations, statements of material facts, and memorandums of law. Movant defendants also submit attorney affirmations in reply.
In opposition, plaintiffs submit an attorney affirmation, a copy of the court's rules, a death index for Varlack, and a memorandum in opposition.
Facts:
The earliest relevant owner of the Property was non-party Andrena Varlack. Andrena Varlack was sole owner of the Property when she died intestate on November 12, 1947. At the time that she passed, Andrena was survived by her two children and her husband. When Andrena's husband and son passed away, her daughter May Louise became the sole remaining distributee of the family's assets. May Louise had one child, Alfred Washington, Sr. ("Alfred") and when she died, he was her sole distributee.
Alfred died in September 2018. At the time that he passed, he was married to Carolyn King Washington ("King") and survived by two children, Chevelle Montague ("Montague") and Alfred L. Washington, Jr. ("Washington Jr."). His wife and children are the plaintiffs herein.
As for the contested transfers of title to the Property, the dispute springs from a deed executed in 1994. On May 15, 1994, almost fifty years after Andrena had died, a deed was executed in her name purportedly transferring the Property to defendant 1251 Polite Corp. As Andrena had been dead for decades by the time that she allegedly signed the deed, this deed is undisputedly forged ("the Forged Deed"). The Forged Deed was not recorded in the Office of the City Register of the City of New York, Bronx County until six years later on February 28, 2000.
One month later, by deed dated March 30, 2000, and recorded on April 19, 2000, the Property was conveyed from 1251 Polite Corp. to defendant Yezol, Inc. ("the Yezol Deed"). By affidavit Ilan Cohen, an officer and witness for Yezol, avers that, at the time of the purchase, he believed 1251 Polite Corp. to be the owner of the Property. The Property was purchased with the goal of renovating the building for resale. Yezol was in sole and exclusive possession of the Property during the time that it owned the Property. Yezol paid for all of the costs and expenses of the Property during its time as owner. Yezol was unaware of plaintiffs until the present lawsuit and no one else ever claimed any interest in the property during Yezol's ownership.
A few months later, by deed dated September 18, 2000 and recorded on January 16, 2001, the Property was conveyed from Yezol to defendant Enriz C. Ramirez ("Ramirez") and his mother Zulma Charloten ("Charloten"), as tenants in common. ("the Ramirez/Charloten Deed"). Ramirez and Charloton owned the Property for seven years, from September 18, 2000 to July 25, 2007. Ramirez avers that at the time of the purchase, there was unfinished construction on the Property, which was basically uninhabitable. By taking out loans against the Property, the owners completed between $50,000 and $60,000 worth of renovations to the Property.
The Ramirez family resided at the Property and also rented out the first floor apartment and the storefront for some time before Ramirez used it as his own office space. In the seven years they owned the Property, they collected all of the rent, paid all of the real estate taxes, [*3]water/sewer charges, homeowner's insurance premiums and utilities, and paid for all necessary repairs on the Property. No one ever challenged their ownership of the Property or made any competing claims of ownership; and until this action, Ramirez had never heard of plaintiffs and plaintiffs never had access to any part of the Property.
In addition, over the seven years, Ramirez and Charloten gave three mortgages on the Property, to wit: i) a mortgage dated September 18, 2000, and recorded on January 16, 2001, in favor of Consumer Home Mortgage, Inc. in the amount of $255,050; ii) the Consumer Home Mortgage, Inc. mortgage was then consolidated, extended and modified by agreement on September 29, 2001, for a new loan amount of $256,450; and iii) a mortgage dated July 28, 2003, which was a second position mortgage given to the Secretary of Housing and Urban Development in the amount of $15,299.71 ("the Ramirez/Charloten Mortgages").
After seven years, the Property was sold, by deed dated July 25, 2007 and recorded on August 17, 2007, to defendant Gilberto Pena ("Pena Deed"). Pena purchased the Property for $585,000. Pena gave a first mortgage in favor of Countywide Home Loans, Inc. in the amount of $480,000 and a second mortgage in favor of Countrywide Home Loans, Inc. in the amount of $60,000, each recorded against the Property on August 17, 2007 ("the Pena Mortgages").
Pena owned the Property for approximately six years, from July 25, 2007, to January 29, 2013. Pena testified that when he purchased the Property, he understood Ramirez and Charloten to be the Property's owners. There was a tenant in the Property when he purchased it and he collected rent from the tenant during the time he owned the Property. At times, he rented out a room in the apartment he occupied with his family and also rented out the third-floor apartment. He paid the real estate taxes on the Property through his mortgage, he paid all utility charges and insurance for the Property and maintained the Property by keeping the sidewalks clean, removing the trash, and clearing the snow. During the time that he owned the Property, no one else ever claimed any ownership of the Property and he has never met any of the plaintiffs.
After owning the Property for six years, Pena sold it for a loss via bank short sale, by deed dated January 29, 2013, and recorded on March 12, 2013, to defendant Phase 2 Development, LLC. ("Phase 2 Deed"). Phase 2 paid $120,000. A private mortgage in favor of Imanuel Piroozian in the amount of $230,000 was recorded against the Property on March 12, 2013 ("Phase 2 Mortgage").
Phase 2 owned the Property for one year, from January 29, 2013 to March 19, 2014. The owner of Phase 2 avers that Phase 2 purchased the Property from Pena, who the witness believed to be the owner of the Property. Phase 2 financed its purchase with a $230,000.00 mortgage loan from Piroozian. During the time that Phase 2 owned the Property, the owner collected rents from the occupants of the Property, paid the mortgage, paid real estate taxes, paid water/sewer charges and otherwise maintained the Property. He was not aware of any challenges to the validity of Phase 2's deed and title to the Property or that anyone else was claiming ownership of the Property. He had no reason to believe that anyone other than Phase 2 was the owner of the Property. He does not know and has never heard of or met the plaintiffs, and none of whom lived at the Property during the time that Phase 2 owned it.
One year later, by deed dated March 18, 2014 and recorded on April 8, 2014, movant 1251 Rev James purchased the Property from Phase 2 for $265,000. 1251 Rev James still owns the Property and therefore has been in possession for almost ten years. The owner of 1251 Rev James testified at deposition.
The owner testified that 1251 Rev James has owned the Property for almost a decade, [*4]from March 18, 2014 to the present. 1251 Rev James purchased the Property from Phase 2 for valuable consideration and at no time did the owner have reason to believe that Phase 2 was not the owner of the Property. After owning the Property for six years, 1251 Rev James gave a mortgage dated April 6, 2020 and recorded on April 21, 2020, in favor of defendant M.Y. Safra Bank, FSB in the amount of $1,050,000. ("the MYSB Mortgage"). Since purchasing the Property, 1251 Rev James performed a full rehabilitation of the Property, as well as the installation of a new sewer line from the street. 1251 Rev James paid all real estate taxes on the Property and has continued to pay all utility expenses. Only 1251 Rev James, its property manager and superintendent and tenants have access to the Property. Prior to this lawsuit, there were no challenges to 1251 Rev James' ownership of the Property and the owner does not know any of the plaintiffs. 1251 Rev James alleges that it possesses the subject property under a claim of right, along with its predecessors in interest, and acquired the property by adverse possession.
Plaintiff Montague testified that she lived at the Property almost sixty years ago in 1965- 1966. Her grandmother, May Louise, who died on October 27, 2002, last lived at the Property thirty years ago, in 1994, the year that the Forged Deed was executed. Montague last entered the Property in 1998 for the purpose of boarding it up and then did not return to the Property until September 2020, just before this lawsuit was filed in October 2020. Since 1998, Montague never collected rent or paid for real estate taxes or water/sewer charges on the Property. Furthermore, she never attempted to occupy the premises and never paid for any repairs or improvements to the Property.
Plaintiff Washington Jr. was deposed on October 25, 2021. Washington Jr. testified that he never lived at the Property, he did not go to the Property after his grandmother, May Louise, entered a rehabilitation center in 1995. According to Washington Jr., the last time he visited or even drove by the Property was before 1995. Following the death of his grandmother, Washington Jr. never occupied the premises and never collected any rents, or paid any taxes or utility charges for the Property. Similarly, he never paid for any repairs or improvements and never did any work on the Property.
Plaintiff King married the children's father Alfred in July of 2004 and remained married to him until his death in 2005. King has no familiarity with the Property. She saw the Property only once or twice, in October or November 2004, when she and Alfred drove by so he could show her where he grew up. Other than driving by the Property in the fall of 2004, King has never been to the Property and has never been inside the Property. King never collected rent or paid expenses on the Property, and to her knowledge Alfred never collected rent or paid real estate taxes or water/sewer charges on the Property. After Alfred passed, King never visited the Property, never asserted any ownership interest in the Property, and never spoke about the Property to Alfred's children before this lawsuit.
King acknowledged that Alfred filed for bankruptcy in or about 2004 because he owed a lot of debt. Alfred, in fact, filed a Voluntary Petition for bankruptcy in 2004, listing addresses of 100 Aldrich Street, Bronx, NY and 1185 Carrol Street, Brooklyn, NY, but never listing the Property in his bankruptcy filings, either as a place of residence or as an asset. The submitted Bankruptcy documents confirm these facts.
The original complaint in this action was filed on October 6, 2020, twenty-six years after the execution of the Forged Deed and after six subsequent transfers of title and possession. Plaintiffs also filed a notice of pendency. The amended complaint alleges causes of action for quiet title, and declaratory judgment and, in essence, seeks a declaration that the various deeds [*5]and MYSF mortgage are void and plaintiffs are tenant in common owners of the Property. 
1251 Rev James filed an answer asserting affirmative defenses, cross-claims and a counterclaim. The counterclaim seeks an order quieting title, extinguishing any and all claims to an interest in the Property by plaintiffs and a judgment declaring that 1251 Rev James the legal owner of good and valid title to the Property by adverse possession, thereby extinguishing any claims to an interest in the Property by plaintiffs and others.
MYSB filed an amended answer with affirmative defenses, cross-claims and two counterclaims seeking, in sum and substance, a declaration the 1251 Rev James is the owner of the Property through adverse possession and the MYSB mortgage is a valid lien on the Property or, in the alternative, a lien based on unjust enrichment.
LEGAL ANALYSIS
"Since New York established its summary judgment procedure in 1921, summary judgment has proven a valuable, practical tool for resolving cases that involve only questions of law. Summary judgment permits a party to show, by affidavit or other evidence, that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law, thereby avoiding needless litigation cost and delay. Where appropriate, summary judgment is a great benefit both to the parties and to the overburdened New York State trial courts (internal citation omitted)." Brill v. City of New York, 2 NY3d 648 (2004).
Of course, the "proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering evidence sufficient to eliminate any material issues of fact from the case." Winegrad v. NY Univ. Med. Ctr., 64 NY2d 851, 853 (1985). Upon such a showing, the burden then shifts to the nonmovant to present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact. Zuckerman v. City of New York, 49 NY2d 557 (1980); Mazurek v. Metro. Museum of Art, 27 AD3d 227, 228 (1st Dep't 2006).
When deciding a summary judgment motion, a court's role is solely to determine if any triable issues exist, not to determine the merits of any such issues. Sillman v. Twentieth Century-Fox Film Corp., 3 NY2d 395 (1957). In making this determination, the court must view the evidence in the light most favorable to the party opposing the motion, and it must give that party the benefit of every inference that can be drawn from the evidence. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh, 22 NY3d 470, 475 (2013); Vega v. Restani Constr. Corp., 18 NY3d 499 (2012). 
Of import here, the proponent of an action to quiet title must establish that it holds title to the property or that the nonmovant's title claim is without merit. X & Y Dev. Group, LLC v. Epic Tower, LLC, 196 AD3d 732 (2d Dep't 2021); see Ortiz v. Eldert 294, LLC., 223 AD3d 911 (2d Dep't 2024); 702 DeKalb Residence, LLC., v. SSLiberty, Inc., 209 AD3d 937 (2d Dep't 2022); 1259 Lincoln Place Corp. v. Bank of New York, 159 AD3d 1004 (2d Dep't 2018). In an action to quiet title, a party who demonstrates that it acquired title to property by adverse possession establishes entitlement to summary judgment. Ray v. Beacon Hudson Mtn. Corp., 88 NY2d 154 (1996); see Warren v. Carreras, 133 AD3d 592 (2d Dep't 2015); Gelles v. Sauvage, 77 Misc 3d 1237(A) (Sup. Ct. Bronx County 2023).
On this motion, there do not appear to be any contested material facts. Based upon a review of the submissions, assuming the Forged Deed was forged, movant defendants satisfy [*6]their prima facie burden of demonstrating that 1251 Rev James holds valid title to the Property based on adverse possession.
Title based on the Forged Deed
As for the traditional conveyance of title, the parties herein agree that a grantor cannot convey title to property which he or she does not possess. Faison v. Lewis, 25 NY3d 220 (2015); see generally X & Y Dev. Group, LLC. v. Epic Tower, LLC., supra; Matter of New Creek Bluebelt, Phase 4, 79 AD3d 888 (2d Dep't 2010). A forged deed, therefore, cannot convey good title, and it is legally impossible for purchaser to become a bona fide purchaser of real estate, or a purchaser at all, from one who never had any title, such as in this case. Faison v. Lewis, supra; see Marden v. Dorthy, 160 N.Y.39 (1899); Deramo v. Laffey, 149 AD3d 800 (2d Dep't 2017); Jiles v. Archer, 116 AD3d 664 (2d Dep't 2014); Cruz v. Cruz, 37 AD3d 754 (2d Dep't 2007); Yin Wu v. Wu, 288 AD2d 104, 105 (1st Dep't 2001) (forged deed is void and conveys no title); see also, Watson v. Lampkin, 214 AD3d 427 (1st Dep't 2023); Selene Finance, L.P. v. Jones, 203 AD3d 1191 (2d Dep't 2022); Rockwell v. Despart, 212 AD3d 27 (3d Dep't 2022).
It is similarly true that no property shall be encumbered, including by a mortgagee, in reliance on a forged deed. Faison v. Lewis, supra; Deramo v. Laffey, supra; Jiles v. Archer, supra (if a document purportedly conveying a property interest is void, it conveys nothing, and a subsequent bona fide encumbrancer for value receives nothing); Cruz v. Cruz, supra (deed based on forgery or obtained by false pretenses is void ab initio, and a mortgage based on such a deed is likewise invalid); see also Selene Finance, L.P. v. Jones, supra; Citibank N.A. v. Burns, 187 AD3d 839 (2d Dep't 2020); 1259 Lincoln Place Corp. v. Bank of New York, supra.
Moreover, New York's recording statute (Real Property Law § 291) does not apply to a forged deed. Faison v. Lewis, supra; see Albany County Sav. Bank v. McCarty, 149 NY 71, 74 (1896); Grosch v. Kessler, 231 App. Div. 870, 870 (2d Dep't 1930). Simply put, the recording statute applies to genuine instruments and not to forged ones.
Here, it is undisputed that the Forged Deed, which was executed in 1994, was a forgery. Given the clarity of the law that such a forged deed is void ab initio, and that it is a document without legal capacity to have any effect on ownership rights or the right to encumber a property, the Forged Deed did not convey title to the subsequent buyers, including movants, nor did it convey the right to encumber the Property with a mortgage. Faison v. Lewis, supra; Deramo v. Laffey, supra; see Staine v. Summit Place, Inc., 40 AD3d 330 (1st Dep't 2007).
Adverse Possession
However, title to a property may be obtained through the alternate route of adverse possession. In an action to quiet title, a party who demonstrates by clear and convincing evidence that it acquired title to property by adverse possession as set forth in statutory and common law establishes entitlement to summary judgment. Estate of Becker v. Muragh, 19 NY3d 75 (2012); Ray v. Beacon Hudson Mtn. Corp., 88 NY2d 154 (1996); Warren v. Carreras, 133 AD3d 592 (2d Dep't 2015); see Gelles v. Salvage, supra. In addition, a mortgagee is entitled to assert a cause of action to quiet title pursuant to RPAPL 1501 based on its claim that the mortgage encumbered the entire premises because the mortgagor acquired title to the entire premises by adverse possession. Lewis v. U.S. Bank National Association, 186 AD3d 694 (2d [*7]Dep't 2020). Of import, to be successful on the claim, the party seeking title by adverse possession must demonstrate that the requirements of adverse possession are satisfied by clear and convincing evidence. Estate of Becker v. Murtagh, supra; 195 E76 LLC. v. 197 East 76th Street, LLC., 213 AD3d 543 (1st Dep't 2023); Bursky v. Gerratano, 184 AD3d 796 (2d Dep't 2020); Warren v. Carreras, supra; Ram v. Dann, 84 AD3d 1204 (2d Dep't 2011).
Hence a party seeking to obtain title by adverse possession must prove by clear and convincing evidence the following common-law requirements of adverse possession: that (1) the possession was hostile and under claim of right; (2) it was actual; (3) it was open and notorious; (4) it was exclusive; and (5) it was continuous for the statutory period of 10 years. Estate of Becker v. Murtagh, supra; Ray v. Beacon Hudson Mtn., Corp., supra; Rote v. Gibbs, 195 AD3d 1521 (4th Dep't 2021); Children's Magical Garden, Inc. v. Norfolk St. Dev., LLC., 164 AD3d 73 (1st Dep't 2018); Ram v. Dann, supra; see generally Seabiscuit Realty LLC. v. Hayes, 2024 NY Slip Op. 00881 (1st Dep't 2024); 195 E76 LLC., v. 197 East 76th Street, LLC., supra; Gelles v. Sauvage, supra. Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period. Estate of Becker v. Murtagh, supra; Ram v. Dann, supra. There are similar statutory requirements as well, whether the possession is under a written instrument (RPAPL §§511, 512) or under claim of title not written (§§ 521, 522). see generally, Estate of Becker v. Murtagh, supra; Ray v. Beacon Hudson Mtn. Corp, supra; Brand v. Prince, 35 NY2d 634 (1974); Warren v. Carreras, supra; Skyview Motel, LLC. v. Wald, 82 AD3d 1081 (2d Dep't 2011).
Here, the adverse possession claim is based on the series of deeds which are "written instruments". Importantly, the existence of a fraudulent deed can support the necessary color of title to establish an adverse possession claim as the critical issue in a claim under the doctrine of adverse possession is possession and not record title. Goff v. Shultis, 26 NY2d 240 (1970); see Ziegler v. Serrano, 74 AD3d 1610 (3d Dep't 2010); Guenther v. Allen, 268 AD2d 934 (3d Dep't 2000); see also Hogan v. Kelly, 86 AD3d 590 (2d Dep't 2011).
The New York adverse possession statute (RPAPL, Art. 5), as amended in 2008 [FN1]
, sets forth the standards for acquiring title through adverse possession.
Section 501 of the RPAPL provides:
1. Adverse possessor. A person or entity is an "adverse possessor" of real property when [*8]the person or entity occupies real property of another person with or without knowledge of the other's superior ownership rights, in a manner that would give the owner a cause of action for ejectment.
2. Acquisition of title. An adverse possessor gains title to the occupied real property upon the expiration of the statute of limitations for an action to recover real property pursuant to subdivision (a) of section two hundred twelve of the civil practice law and rules, provided that the occupancy, as described in sections five hundred twelve and five hundred twenty-two of this article, has been adverse, under claim of right, open and notorious, continuous, exclusive, and actual.
3. Claim of right. A claim of right means a reasonable basis for the belief that the property belongs to the adverse possessor or property owner, as the case may be. Notwithstanding any other provision of this article, claim of right shall not be required if the owner or owners of the real property throughout the statutory period cannot be ascertained in the records of the county clerk, or the register of the county, of the county where such real property is situated, and located by reasonable means.
Section 511 of the RPAPL (adverse possession under written instrument) further provides, in pertinent part:
Where the occupant or those under whom the occupant claims entered into the possession of the premises under claim of right, exclusive of any other right, founding the claim upon a written instrument, as being a conveyance of the premises in question . . . and there has been a continued occupation and possession of the premises included in the instrument . . . for ten years, under the same claim, the premises so included are deemed to have been held adversely.
In relevant part, section 512 of the RPAPL (essentials of adverse possession under written instrument) further provides:
For the purpose of constituting an adverse possession, founded upon a written instrument . . . land is deemed to have been possessed and occupied in any of the following cases:
1. Where there has been acts sufficiently open to put a reasonably diligent owner on notice.
As an initial matter, it is undisputed that in this case, based on the recorded deeds and mortgages, the true owner of the Property throughout the statutory period could not be ascertained by review of the records of the County Clerk due to the Forged Deed. Hence, a demonstration of a claim of right here is not required under section 501. In any event, movants demonstrate a claim of right in the moving papers based on the facts, and set forth a prima facie showing for adverse possession.
Section 501 (1) possession in manner which would give cause of action for ejection
Applying section 501(1) to the undisputed facts, it is uncontroverted that the movant 1251 Rev James and its predecessors-in-interest occupied the Property in a manner that would give the owner cause for ejection. Over the years, the various defendants paid the taxes, [*9]maintained, and substantially renovated the Property, and leased and lived in the Property. In addition, from 2000 to date, defendants publicly sold the building, recording deeds to reflect the same, and recorded mortgages against the Property. These actions were all taken openly and publicly. As every one of these actions would give raise to a cause of action for ejection, movants set forth a prima facie showing satisfying this criteria.
Section 501(2) occupancy has been adverse, under claim of right, open and notorious, continuous, exclusive, and actual 
...
Adverse
The purpose of the adverse/ hostility requirement is to provide the title owner notice of the adverse claim though unequivocal acts of the usurper. Schulz v. Gilmore, 198 AD3d 994 (2d Dep't 2021); Waterview Towers Inc. v. 2610 Cropsey Development Corp., 181 AD3d 754 (2d Dep't 2020); see 168-170 Flushing Ave., LLC., v. February 22, LLC., 165 AD3d 742 (2d Dep't 2018). Hostility does not require enmity or acts of actual hostility but merely means that the adverse possessor asserts a right to the property and uses it in a manner which is adverse to the title owner and also in opposition to the rights of the true owner. Estate of Becker v. Murtagh, supra; see Monnot v. Murphy, 207 NY 240, 245 (1913) (The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period). 
The law further provides that the element of adverse hostility can be inferred from the existence of the other four elements. Estate of Becker v. Murtagh, supra; Waterview Towers, Inc. v. 2610 Cropsey Development Corp., supra. A rebuttable presumption of hostility arises from possession accompanied by the usual acts of ownership, and this presumption continues until the possession is shown to be subservient to the title of another. Estate of Becker v. Murtagh, supra. Once accomplished, the burden shifts to the record owner to produce evidence rebutting the presumption of adversity. Id; Estate of Clanton v. City of New York , 153 AD3d 787 (2d Dep't 2017). Of note, there is no evidence or allegation that there was any permissive use in this case. see generally Children's Magical Garden, Inc., v. Norfolk St. Dev., LLC., 164 AD3d 73 (1st Dep't 2018); Megalli v. Yeager, 167 AD3d 860 (2d Dep't 2018); compare Lewis v. Holliman, 186 AD3d 692 (2d Dep't 2020).
Based on the undisputed facts, movants demonstrate that 1251 Rev James and its predecessors-in-interest possessed the Property in an adverse manner through the unequivocal acts of a usurper. Green Hills (USA), LLC v. Marjam of Rewe Street, Inc., 208 AD3d 1156 (2d Dep't 2022); 168-170 Flushing Ave, LLC. v. February 22, LLC., supra; Ziegler v. Serrano, 74 AD3d 1610 (3d Dep't 2010). Defendants recorded the relevant deeds, paid the expenses, occupied the premises to the exclusion of others, mortgaged the property, renovated, and rented the Property, and committed other actions that constituted clear notice to the title owner of their adverse claim. 168-170 Flushing Ave, LLC. v. February 22, LLC., supra; Ziegler v. Serrano, supra; see Waterview Towers, Inc. v. 2610 Cropsey Development Corp., supra; compare Reyes v. Carroll, 137 AD3d 886 (2d Dep't 2016); Bullock v. Louis, 188 AD3d 783 (2020).
Furthermore, as is set forth below, in this case the presumption of adverse occupation is inferred from the demonstration of the other required elements. Estate of Becker v. Murtagh, supra; Montanaro v. Rudchyk, 189 AD3d 1214 (2d Dep't 2020). The presumption therefore shifts the burden to plaintiffs to produce evidence rebutting the claim of adverse possession. Estate v. Murtagh, supra; Montanaro v. Rudchyk, supra; see Green Hills (USA), LLC. v. Marjam [*10]of Rewe Street, Inc., supra; Schulz v. Gilmore, supra.

 Claim of Right
As stated above, movants need not demonstrate a claim of right here as the owner of the real property throughout the statutory period cannot be ascertained in the records of the County Clerk, or the register of the county, of the county where such real property is situated, and located by reasonable means. RPAPL §501. Specifically, it is undisputed that, due to the Forged Deed and subsequent deeds, a review of the County Court records would not have revealed the owner of the Property.
In any event, movants demonstrate a "claim of right". A claim of right means a reasonable basis for the belief that the property belongs to the adverse possessor or property owner, as the case may be. RPAPL §501[3]. Here, based on the record, including the numerous executed deeds, 1251 Rev James and its predecessors-in-interest had a reasonable basis for the belief that the Property belonged to each defendant. Specifically, each consecutive owner, from Yezol to 1251 Rev James provided evidence by deposition testimony or affidavit that: i) they purchased the Property from a prior owner and recorded a deed to that effect; ii) they were unaware of any challenges to their ownership from any prior owner of the Property and believed title to be legally transferred; and iii) were not familiar with plaintiffs or any right plaintiffs claim to have in the Property. As such, 1251 Rev James, as the final purchaser, demonstrates that it holds title under a claim of right. Ziegler v. Serrano, supra (deed by one purporting to have authority to convey provides the requisite color of title to support an adverse possession claim); Guenther v. Allen, supra.

Open and notorious
Furthermore, the evidence submitted shows that 1251 Rev James and its predecessors-in-interest's occupation was open and notorious. Rote v. Gibbs, 195 AD3d 1521 (4th Dep't 2021). The element of open and notorious requires that the possession be sufficiently visible such that a casual inspection by the owner of the property would reveal the adverse possessor's occupation and use thereof. Rote v. Gibbs, supra; Weinstein Enterprises, Inc. v. Pesso, 231 AD2d 516 (2d Dep't 1996).
Here the evidence shows 1251 Rev James and its predecessors-in-interest continuously, openly, and notoriously exercised ownership and possession of the Property since its purchase in 2000. 1251 Rev James and its predecessors-in-interest recorded deeds after purchasing the Property. The individuals and their families lived in the Property or rented out portions of the Property, and in the process excluded all others from using the Property. The documentation and testimony demonstrate that from Yezol to present day owner 1251 Rev James each principal paid for renovations, taxes, sewer charges, rented the space, and occupied the Property all without concealment and reviewable by casual inspection. Thus, the open acts of 1251 Rev James and its predecessors-in-interest were open and obvious as they were sufficient to put plaintiffs, or any reasonably diligent owner, on notice of their possession. See generally, Schulz v. Gilmore, supra; 168-170 Flushing Ave, LLC. v. February 22, LLC, supra.

Continuous for ten years
Based on the uncontested facts, 1251 Rev James and its predecessors-in-interest demonstrate that the ownership, possession, and occupancy of the Property has been continuous from 2000, for a period of more than ten years. The requirement of continuous possession is satisfied when the adverse claimant's acts of possessing the property, including periods during which the claimant exercises dominion and control over the premises or is physically present on the land, are consistent with acts of possession that ordinary owners of like properties would undertake. Ray v. Beacon Hudson Mtn. Corp., 88 NY3d 154 (1996).
The Courts have consistently held that a party claiming adverse possession may establish possession for the ten-year required statutory period by "tacking" the time that the party possessed the property onto the time that the party's predecessor(s) adversely possessed the property. Brand v. Prince, 35 NY2d 634 (1974); Belotti v. Bickhardt, 228 NY 296 (1920);Children's Magical Garden, Inc., v. Norfolk Street Development, LLC., supra; Montanaro v. Rudchyk, supra; Munroe v. Cheyenne Realty, LLC., 131 AD3d 1141 (2d Dep't 2015) (tacking is permitted where there is an unbroken chain of privity between the adverse possessors). While there is a written instrument here, even where no instrument applies, tacking is available where a party shows that the predecessor intended to and actually turned over possession of the property. Brand v. Prince, supra (successive adverse possession of property may be tacked); Children's Magical Garden, Inc., v. Norfolk Street Development, LLC., supra; Gjokaj v. Fox, 25 AD3d 759 (2d Dep't 2006); Oistacher v. Rosenblatt, 220 AD2d 493 (2d Dep't 1995). 
Specifically, movants assert that title vested based on Yezol taking possession in 2000 and the tacking of the years of defendants' possession thereafter to date. All defendants aver that at each transfer of the Property by recorded deed, the seller and purchaser understood the conveyance to include ownership of the Property. Plaintiffs do not contradict this fact. See, generally Hamil v. Casadei, 214 AD3d 1177 (3d Dep't 2023). Hence, in the present case, the facts establish that each owner from Yezol to 1251 Rev James intended to and actually turned over ownership and possession of the Property to the subsequent buyer. As such, 1251 Rev James established that the Property was adversely possessed for more than 10 years before the commencement of this action.

Exclusivity
To establish the "exclusivity" element, the adverse possessor must alone care for or improve the property as if it were its own. Estate of Becker v. Murtagh, supra; Rote v. Gibbs, supra; Gelles v. Sauvage, supra. The focus is on whether the party claiming title by adverse possession exercised exclusive possession and control of the property. Estate of Becker v. Murtagh, supra (finding exclusivity where the adverse possessor excluded public from property); Rote v. Gibbs, supra; see also, Golobe v. Altchek as Trustee of Emil Krause Revocable Trust, 212 AD3d 410 (1st Dep't 2023); Waterview Towers, Inc. v. 2610 Cropsey Development Corp., supra; Beddoe v. Avery, 145 AD2d 818, 819 (3d Dep't 1988). To that end, provided that the adverse possessor uses land/property in ways that are separate and exclusive from the general use, exclusivity is not negated merely because others are permitted to also use the property/land. Rote v. Gibbs, supra; Golobe v. Altchek as Trustee of Emil Krause Revocable Trust, supra; Air Stream Corp. v. 3300 Lawson Corp., 99 AD3d 822 (2d Dep't 2012).
Here, movants demonstrate by clear and convincing evidence that each defendant's use of the disputed Property was separate and exclusive. Rote v. Gibbs, supra; It is undisputed that each [*11]successive owner (from Yezol to 1251 Rev James) owned and occupied the Property to the exclusion of all others, including plaintiffs. Yezol avers that he purchased the Property vacant and kept that way until the sale of the Property to Ramirez and Charloten. Ramirez testified that he and his family resided in and rented out a portion of the Property, holding themselves out as the owners of the Property and managing, maintaining, and controlling the Property. Next Pena also testified that he and his family occupied the second-floor apartment and rented out the rest of the Property; and only he and his tenants had access and keys to Property during his ownership, which ended as a financial loss. Furthermore, Phase 2's principal affirmed, similarly, that Phase 2 managed and maintained the Property during its ownership to the exclusion of all others. Finally, 1251 Rev James' principal confirmed that he has managed and maintained the Property during its ownership; and no one other than 1251 Rev James and its agents and tenants have access to the Property. As such, it is clear that 1251 Rev James and the predecessors-in-interest exercised exclusive ownership of the Property. Estate of Becker v. Murtagh, supra; Rote v. Gibbs, supra; Air Stream Corp. v. 3300 Lawson Corp., supra.

Actual
With respect to the element of actual possession, the issue is actual occupation, and not subjective knowledge of ownership. Walling v. Przybylo, 7 NY3d 228 (2006); Rote v. Gibbs, supra. Based on the uncontradicted facts showing defendants' acts of occupation, dominion, control, and exercise of ownership over the Property over decades, movants establish by clear and convincing evidence the element of actual possession. See Id.; Green Hills (USA), LLC. v. Marjam of Rewe Street, Inc., 208 AD3d 1156 (2d Dep't 2022); Schulz v. Gilmore, supra; 168-170 Flushing Ave, LLC v. February 22, LLC., supra.
Section 511 — acts sufficient open to put reasonably diligent owner on notice.
Section 512 — adverse possession under written instrument — land is possessed and occupied where there has been acts sufficiently open to put a reasonably diligent owner on notice.
Furthermore, based on the reasoning set forth above, movants satisfy the requirements of section 511 and sections 512 by clear and convincing evidence as well.
Accordingly, movants make a prima facie showing of warranting a judgment granting 1251 Rev James title to the Property based on the legal principles of adverse possession. Ziegler v. Serrano, supra (deed holders were entitled to judgment quieting title to real property based on adverse possession, where they continuously possessed and exclusively occupied the property under a claim of right for over ten years, since the property was conveyed to them they undertook numerous acts consistent with those of a property owner and sufficient to put claimant on notice, including payment of all taxes, extensive landscaping, installing a shed and fence, and prominently displaying their surname on the home's mailbox). 
Plaintiffs' Opposition
Plaintiffs, in turn, fail to raise a material issue of fact in opposition to movants' prima facie showing that 1251 Rev James acquired title by adverse possession. Of import, plaintiffs do not deny any of the material facts and must overcome the presumption of adversity generated by the showing of the other four elements of adverse possession. Estate of Clanton v. City of NY, 153 AD3d 787 (2d Dep't 2017).
Here, it is undisputed that plaintiffs never lived at the Property, had not visited the Property in decades, never paid taxes or water bills, and never made any improvements to the Property. Furthermore, Alfred filed Bankruptcy and failed to list the Property in the proceeding, thereby conceding that he had no ownership interest therein. In fact, plaintiffs fail to provide any proof that any of the three of them ever attempted to occupy, control, improve, maintain or possess the Property. Nor is there any evidence that, prior to this lawsuit, any of the plaintiffs ever challenged defendants' actual, open, continuous, exclusive, control of the Property.
To the extent that plaintiffs' attorney argues that since the Forged Deed was forged and void ab initio, movant defendants and its predecessors cannot hold the Property by "claim of right" or by extension acquire title by adverse possession, the attorney fails to cite any legal precedent to support that position. The contention is therefore rejected as the court is not required to scour the record or all of jurisprudence on its own in search of possible legal precedent to bolster plaintiffs' unsupported legal position. see DPB Family LLC. v. Eutychia Group, LLC., 2022 WL 3133897 (Sup. Ct. New York County 2022).
In any event, the contention that movant cannot obtain title by adverse possession of the Property because there is forged deed in the historical chain of title is contrary to the Court of Appeals decision in Goff v. Shultis, 26 NY2d 240 (1970). In Goff v. Shultis, the Court held where a party is claiming adverse possession founded upon a written instrument, the instrument "need not show a good title". Furthermore, a fraudulent deed can still support the necessary color of title to establish an adverse possession claim. see Ammirati v. Van Wicklen, 16 Misc 3d 952, 959 (Sup. Ct. Nassau County 2007); Criswell v. Noble, 113 N.Y.S. 954, 957 (Sup. Ct. Niagara County 1908); Evans v. Lux, 201 N.Y.S. 161, 167 (Sup. Ct. Wayne County 1923); see also, Beaver v. Taylor, 68 U.S. 637, 638-639 (1863) (void deed taken in good faith is sufficient color of title for adverse possession); see generally Ziegler v. Serrano, supra.
Moreover, plaintiffs' argument is contrary to the plain reading and purpose of the adverse possession statute. Ziegler v. Serrano, supra. The purpose of the doctrine of adverse possession is the settlement and repose of titles. Joseph v. Whitcombe, 279 AD2d 122 (1st Dep't 2001). The very essence of adverse possession is the acquisition of title to property that, but for the adverse possession, is legally owned by another. The necessary effect, by barring the real owner's right to recover his property, is, of course, to extinguish his title and make absolute the wrongful possessor's. Brand v. Prince, 35 NY2d 634 (1974). To conclude that a forged deed prevents an award of title by adverse possession would defeat the very purpose of this historical legal principle and is contrary to law.
Accordingly, movants set forth a prima facie showing that 1251 Rev James is entitled to title to the Property based on adverse possession. Plaintiffs fail to generate a question of fact in opposition. The motions are therefore appropriately granted.
The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any contention raised by the parties was not addressed by the Court, it is hereby denied.
Accordingly, it is HEREBY
ORDERED and ADJUDGED that the part of the motion (Seq. No. 5) by defendant 1251 REV JAMES LLC. ("1251 Rev James"), made pursuant to CPLR 3212, that seeks an order granting 1251 Rev James summary judgment dismissing the amended complaint is granted; and it is further
ORDERED and ADJUDGED that the part of the motion (Seq. No. 5) by defendant [*12]1251 Rev James, made pursuant to CPLR 3212, that moves an order granting movant summary judgment on the first counterclaim which seeks an order quieting title in the Property to 1251 Rev James, declaring any right, title or interest in the Property held by plaintiffs CHEVELLE MONTAGUE, ALFRED L. WASHINGTON, JR. and CAROLYN KING WASHINGTON ("plaintiffs"), to have been extinguished through adverse possession and declaring 1251 Rev James to be the owner of good and valid title to the Property is granted; and it is further
ORDERED, ADJUDGED and DECLARED that any right, title or interest in the Property held by plaintiffs has been extinguished through adverse possession; and it is further
ORDERED, ADJUDGED and DECLARED that 1251 Rev James is the exclusive owner of good and valid title to the Property; and it is further
ORDERED and ADJUDGED that the part of the motion (Seq. No. 6) by defendant M.Y. SAFRA BANK, FSB ("MYSB") that seeks an order, pursuant to CPLR 3212, granting summary judgment in favor of MYSB dismissing the amended complaint is granted; and it is further
ORDERED and ADJUDGED that the part of the motion (Seq. No. 6) by defendant MYSB that moves for an order, pursuant to CPLR, granting defendant MYSB summary judgment on its first counterclaim that seeks a declaration that defendant MYSC's $1,050,000.00 mortgage, as described in the underlying motion papers, is a valid mortgage lien on the Property on the ground that defendant 1251 Rev James, MYSB's mortgagor, has good and valid ownership of and title to the Property through adverse possession is granted; and it is further
ORDERED, ADJUDGED and DECLARED that it is declared that defendant MYSB's $1,050,000.00 mortgage, as described in the underlying motion papers, is a valid mortgage lien on the Property on the ground that defendant 1251 Rev James, MYSB's mortgagor, has good and valid ownership of and title to the Property through adverse possession; and it is further
ORDERED and ADJUDGED that the Clerk shall enter judgment: in favor of moving defendants dismissing the complaint in its entirety; granting defendant 1251 Rev James summary judgment on its counterclaim for declaratory judgment; and granting defendant MYSB summary judgment on its first counterclaim for declaratory judgment; and it is further
ORDERED and ADJUDGED that in light of the findings herein, any Notice of Pendency filed by plaintiffs against the property is canceled; and it is further
ORDERED that the Bronx County Clerk, upon presentation of a copy of this Decision, Order, and Judgment is directed to enter upon its books and records the cancellation of any Notice of Pendency filed by plaintiffs; and it is further
ORDERED that the Clerk shall mark the motions (Seq. Nos. 5,6) decided and the action disposed in all court records.
This constitutes the decision, order, and judgment of the Court.
Dated: March 5, 2024
Hon. HON. VERONICA G. HUMMEL, A.S.C. J.

Footnotes

Footnote 1:
In 2008, the adverse possession statute (RPAPL art 5) was amended in its entirety (L 2008, ch 269) to, among other things, discourage people from claiming adverse possession over real property they know belongs to another with superior ownership rights. Among the changes, the Legislature defined the terms "adverse possessor," "acquisition of title," and "claim of right" (RPAPL §501), and altered the requirements that must be made out where the adverse possession claim is not based on a written instrument (RPAPL §522). The 2008 amendments are applicable to the instant appeal because movant's title vested (by adverse possession) after the effective date of the amendments. Bullock v. Louis, 188 AD3d 783 (2d Dep't 2020); see Houdek Real Estate Co., LLC. v. Bayport Postal Realty, LLC., 180 AD3d 761 (2d Dep't 2020); Guan v. EZC Carolinas, LLC., 222 AD3d 1086 (3d Dep't 2023).